UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **STEVEN HARVEY**<br>*Petitioners*,<br>**v.**<br><br>**DWIGHT D. SULLIVAN, Galveston County Clerk; MARK HENRY, Galveston County Judge; DARRELL APFFEL, Galveston County Commissioner Precinct 1, JOE GIUSTI, Galveston County Commissioner Precinct 2, STEPHEN D. HOLMES, Galveston County Commissioner Precinct 3, AND ROBIN ARMSTRONG, Galveston County Commissioner Precinct 4,**<br>*Respondents*. | Civil Action No. 3:22-cv-00337 |

## Second Amended Petition

Steven Harvey
12511 32nd Street
(409) 599-5691
Santa Fe TX 77510
scharvey69@yahoo.com
*Pro se Petitioner*

Bryan R. Lasswell
Attorney-in-Charge
Federal Bar No. 15715
SBOT: 00784450
brlasswell@mapalaw.com

Genevieve Bacak McGarvey
Federal Bar No. 11272
SBOT: 01487525
gbmcgarvey@mapalaw.com

John W. Drewry, Jr.
Federal Bar No.: 3170417
SBOT: 24085291
jwdrewry@mapalaw.com

Kierra J. Vogel
Federal Bar No. 3795634
SBOT: 24120212
kjvogel@mapalaw.com

MCLEOD, ALEXANDER, POWEL & APFFEL, P.C.
802 Rosenberg P.O. Box 629
Galveston, Texas 77553
Ph: (409)763-2481
Fax: (409)762-1155
ATTORNEYS FOR DEFENDANTS

*TO THE HONORABLE JUDGE JEFFREY V. BROWN,*

COME NOW, PETITIONERS STEVEN HARVEY, (hereinafter collectively referred to as “Petitioners”), file this Second Amended Petition for Declaratory and Injunctive Relief for preservation of records, against the certification of the November 8, 2022, election and the continued use of electronic voting systems (EVS) pursuant to Fed. R. Civ. P. Rule 15(a)(1)(B), barring Defendants from using computerized equipment to administer the collection, storage, counting, and tabulation of votes in any election, calling for proper investigations and reconciliation of the elections for 2020 general, 2021 special, 2022 primaries, and 2022 general elections, and barring Respondents from certifying the November 2022 election conducted on uncertified, substandard EVS and devices.

## Table of Contents

**TABLE OF AUTHORITIES** .......... **3**

**I. INTRODUCTION** .......... **10**

**II. JURISDICTION AND VENUE** .......... **13**

**III. NATURE OF THIS ACTION** .......... **14**

**IV. ISSUES PRESENTED** .......... **15**

**V. FACTUAL ALLEGATIONS** .......... **16**

**A. Judicial Notice** .......... 16

**B. Galveston County** .......... 17

1. ***KNOWiNK Poll Pads*** .......... 18

2. ***SOE Software Corporation (d/b/a Scytl)*** .......... 19

**C. Hart Intercivic Verity** .......... 20

**D. Hart Intercivic Ballot Issues** .......... 24

**VI. ARGUMENTS AND AUTHORITIES** .......... **31**

**A. Declarations From Authorities** .......... 35

1. *Declaration of Terpsehore Maras (Appendix 10)* .......... 35

B. **Failures, Neglect, and Offensive Violations** .......... 36

**C. Remediable Rights** .......... 39

**D. Emergency Relief is Necessary** .......... 40

**VII. COUNTS** .......... **41**

**COUNT I - Violation of Due Process** .......... 42

**COUNT II - Violation of Equal Protection Clause** .......... 43

**COUNT III – Deprivation of Civil Rights** .......... 45

**COUNT IV – Deprivation of Constitutional Rights** .......... 46

**COUNT V – Voting Rights Violation** .......... 47

**COUNT VI – Declaratory Judgment** .......... 48

**VII. CONCLUSION** .......... **50**

**VIII. PRAYER FOR RELIEF** .......... **51**

**CERTIFICATE OF SERVICE** .......... **53**

Secretary of State Approval Letter .......... Appendix 1
Report Of Review Of Hart Intercivic's Verity 2.0 Voting System .......... Appendix 2
Hart Contract .......... Appendix 3
Hart Intercivic, Inc. Verity 2.0 Certificate of Accreditation .......... Appendix 4
Accreditation and Certifications .......... Appendix 5
Hart Intervivic 2.4.2 .......... Appendix 6
KNOWiNK Contract .......... Appendix 7
SOE Software Corporation (d/b/a Scytl) Contract .......... Appendix 8
Foreign Companies in Texas Infrastructure .......... Appendix 9
Declaration of Terpsehore Maras .......... Appendix 10

# TABLE OF AUTHORITIES

## *Cases*

*Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015) .......... 41
*Arneson v. Bd. of Trustees of Employees' Retirement System of Ga.*, 257 Ga. 579, 579-580 (1)-(3) (361 SE2d 805) (1987) .......... 39
*Assoc. Indus. of New York v. Ickes,* 134 F.2d 694, 704 (2d Cir. 1943) .......... 46
*Azul Pacifico, Inc. v. City of Los Angeles*, 948 F.2d 575, 586 (9th Cir. 1991) .......... 15

Baker v. Carr 369 US 186, 208 (1962) .......... 39
*Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992) .......... 39
*Bush v. Gore*, 531 U.S. at 104–05, 121 S.Ct. 525(2000) .......... 11
*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n. 1 (6th Cir.2005) .......... 16
*Cooper v. Aaron,* 358 U.S. 1, 78 S. Ct. 1401 (1958) .......... 50
*Cuellar v. Maldonado*, No. 13-14-00491-CV, at *7 (Tex. App. Mar. 5, 2015). .......... 39
*Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1404 (N.D. Ga. 2019) .......... 11
*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*,274 F.3d 377, 400 (6th Cir.2001) .. 41
*DeVries v. Secretary of State,* 329 Mich. 68 (1950). 44 N.W.2d 872. .......... 50
*Dickinson*, 331 U.S. at 748, 67 S.Ct. (1947) .......... 15
*Dobbs v. Jackson Women's Health Organization*, No. 19-1392 (June 24, 2022). .......... 15
*Elrod v. Burns*, 427 U.S. 347, 373 (1976) .......... 46
*Ex parte Young*, 209 U.S. 123 (1908) .......... 13
*Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973) .......... 45
*Gomillion v. Lightfoot*, 364 U.S. 339, 347-48 (1960) .......... 47
*Grimes v. Navigant Consulting, Inc*., 185 F.Supp.2d 906, 913 (N.D.Ill.2002). .......... 17
*Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 472 (Tex. 2012). .......... 46
*Hernandez*, 872 F.3d (2017) .......... 46
*In re State*, No. 20-0394, at *10 n.33 (Tex. May 27, 2020). .......... 39
*Jacobs*, 290 U.S. at 16, 54 S.Ct. (1933) .......... 15
*Karen Wiseman v. Tarrant County, Texas and Heider Garcia* (2021) No. 096-330696-21, Texas .......... 49
*Kari Lake, et al. v. Karie Hobbs, Arizona Secretary of State* (case 2:22-cv-00677-JJt) .......... 36
*Krier v.Navarro*, 952 S.W.2d 25 .......... 25
*Kusper v. Pontikes*, 414 U.S. 51, 55 (1973) .......... 39
*Lackey v. State*, 638 S.W.2d 439, 467 (Tex. Crim. App. 1982) .......... 46
*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) .......... 46
*Michael Higgin and Michael Mennella v. The Honorable Anthony J. Albence, et.al.* No. 2022-0641-NAC and *Ayonne "Nick" Miles, Paul J. Falkowski, and Nancy M. Smith v. Delaware Department of Election, et.al.* No. 2022-0644-NAC. Sept. 14, 2022. (Memorandum Opinion) .......... 12
*Obama for Am. v. Husted*,697 F.3d 423, 436 (6th Cir.2012) .......... 41
*O'Toole v. Northrop Grumman Co*rp., 499 F.3d 1218, 1225 (10th Cir. 2007) .......... 17
*Reynolds v. Sims*, 377 U.S. 533, 558 (1964) .......... 10
*Rice v. Cayetano,* 528 U.S. 495 (2000) .......... 43
*Rothschild v. Columbus Consol. Govt*., 285 Ga. 477, 479-480 (678 SE2d 76) (2009) .......... 40
*San Diego Gas Electric Co. v. City of San Diego*,450 U.S. 621, 654-55, 101 S.Ct. 1287, 1305-06, 67 L.Ed.2d 551 (1981) .......... 15
*Schaffer v. Clinton*, 240 F.3d 878, 885 n. 8 (10th Cir.2001) .......... 17
*Shelby County v. Holder*, 570 U.S. 529, 566 (2013) .......... 39
*Sherar v. Cullen,* 481 F 946 (1973) .......... 50
*Snyder v. Phelps*, 580 F.3d 206, 214 n.4 (4th Cir. 2009) .......... 42

*Sons of Confederate Veterans, et.al. v. Henry County Board of Commissioners*, No. S22G0039. AND *Sons of Confederate Veterans, et.al. v. Newton County Board of Commissioners*, No. S22G0045. GA Sup. Court October 25, 2022 ..... 40
*State v. Johnson*, 821 S.W.2d 609 (Tex. Crim. App. 1991) ..... 15
*State v. Terrazas*, 962 S.W.2d 38, 40 n.2 (Tex. Crim. App. 1998) ..... 15
*Stromberg v. California*, 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) ..... 42
*Stuart v. Camnitz* , 774 F.3d 238, 244 (4th Cir. 2014). *Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019) ..... 42
*Texas Alliance for Retired Americans; Sylvia Bruni; DSCC; DCCC v. Scott Secretary of State 20-40643 March 16, 2022. United States Court of Appeals, Fifth Circuit.* ..... 50
*Thomas v. Groebl*, 147 Tex. 70, 212 S.W.2d 625, 630 (1948) ..... 39
*Thompson v. Willis*, 881 S.W.2d 221, 225 (Tex. App. 1994) ..... 39
*United States v. Reading Co*., 226 U.S. 324, 357 ..... 46
*Veasey v. Perry*, No. 13-CV-00193, 2014 WL 5090258, at *41 (S.D.Tex. Oct. 9, 2014) ..... 39
*Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652, 656 (1914) ..... 15
*Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ..... 10
*Western Union Telegraph Co. v. Foster*, 247 U.S. 105, 114. ..... 47
*Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) ..... 39

## *Statutes*

13 TAC § 7.125(a)(10) ..... 38
18 U.S.C. § 245 ..... 16, 43
28 U.S.C. § 1331 ..... 14, 42
28 U.S.C. § 1343 ..... 14
28 U.S.C. § 1343(a)(3) ..... 15, 52
28 U.S.C. § 1343(a)(4) ..... 15
28 U.S.C. § 1367 ..... 37, 52
28 U.S.C. § 1391(b) ..... 15
28 U.S.C. § 1943 ..... 48
28 U.S.C. § 2201 ..... 14
28 U.S.C. § 2202 ..... 14, 49
42 U.S.C. § 1983 ..... 14, 42
42 U.S.C. § 1985 ..... 14, 37
42 U.S.C. § 1986 ..... 14, 37
42 U.S.C. §15371(b) ..... 33, 36
52 U.S.C. §10101 ..... 48
52 U.S.C. § 10101(a)(2)(B) ..... 48
52 U.S.C. § 10307(a) ..... 16
52 U.S.C. § 20701 ..... 34
52 U.S.C. § 20971 ..... 34, 39
HAVA ..... 33, 37, 39
HAVA § 231(b)(1) ..... 36

HAVA § 231(b)(2)(B) ........ 36
Help America Vote Act (HAVA) ........ 36
Judiciary Act of 1789 ........ 14
TEX. ADMIN. CODE § 81.60 ........ 39
TEX. ADMIN. CODE § 81.61 ........ 39
TEX. CIV. PRAC. & REM. CODE § 65.011 ........ 42, 52
TEX. ELEC. CODE § 1.0015 ........ 33, 34, 41
TEX. ELEC. CODE § 1.003(a-1) ........ 33
TEX. ELEC. CODE § 1.013 ........ 34
TEX. ELEC. CODE 1.014 ........ 34
TEX. ELEC. CODE 31.014 ........ 19
TEX. ELEC. CODE § 31.032 ........ 26
Tex. Elec Code § 51.006 ........ 28
Tex. Elec Code § 51.007 ........ 28, 38
Tex. Elec Code § 51.008 ........ 28, 38
Tex. Elec Code § 51.010 ........ 27, 29, 30, 38
Tex. Elec Code § 52.001 ........ 27
TEX. ELEC. CODE § 52.006 ........ 27
Tex. Elec Code § 52.062 ........ 28, 30, 38, 39
Tex. Elec Code § 62.007 ........ 29, 30
Tex. Elec Code § 62.009 ........ 29, 30
TEX. ELEC. CODE § 66.02 ........ 50
TEX. ELEC. CODE § 66.058 ........ 50
TEX. ELEC. CODE § 122.001 ........ 16, 34
TEX. ELEC. CODE § 122.001(a)(3) ........ 33
TEX. ELEC. CODE § 122.001(a)(4) ........ 33
TEX. ELEC. CODE § 122.031 ........ 49
TEX. ELEC. CODE § 122.032 ........ 34, 39
TEX. ELEC. CODE § 123.001 ........ 34, 39
TEX. ELEC. CODE § 123.002 ........ 13, 34, 39, 45
TEX. ELEC. CODE § 273 ........ 43
TEX. ELEC. CODE § 273.081 ........ 41, 42, 52
TEX. ELEC. CODE § 276.013 ........ 35, 48
TEX. ELEC. CODE § 276.013(a)(4) ........ 45
TEX. ELEC. CODE Chp. 64 ........ 14
TEX. ELEC. CODE Chp. 65 ........ 14, 52
Texas Election Code, Title 8 ........ 13, 34, 36
TEX. GOV. CODE § 23. 302 ........ 52
TEX. GOV. CODE § 23.301 ........ 52
TEX. GOV. CODE § 23.302 ........ 42, 52
LOC. GOV. CODE § 81.022 ........ 13

TEX. PEN. CODE § 37.03 .......... 16
TEX. PEN. CODE § 37.09 .......... 16
TEX. PEN. CODE § 37.10 .......... 16, 35
TEX. PEN. CODE § 37.10(3) .......... 38
TEX. PEN. CODE § 37.11 .......... 17
TEX. PEN. CODE §39.03(2) .......... 47

## Other Authorities

About ILAC © 2022. https://ilac.org/about-ilac .......... 31
Accreditor Federal Recognition Process Steps. https://www2.ed.gov/admins/finaid/accred/accreditor-federal-recognition-process-steps.pdf .......... 32
Borgelt Letter Status. https://katychristianmagazine.com/wp-content/uploads/2021/12/Request-for-Opinion-on-Ballot-Numbering_RQ-0405-KP_status-Borgelt-letter.pd .......... 25
Borgelt Letter. Ballot Numbering. https://katychristianmagazine.com/wp-content/uploads/2021/12/Request-for-Opinion-on-Ballot-Numbering_RQ-0405-KP_status-Borgelt-letter.pdf .......... 24
Cohn, Jennifer. (2018) "Handout: The truth about our computerized election systems; Recommendations for advocating for hand marked paper ballots" https://jennycohn1.medium.com/handout-the-truth-about-our-computerized-election-systems-c4a17539de71 .......... 35
Comments from Scytl on the CORE report from the electronic voting solution used in 2010 Victorian Election, Version 1. https://www.parliament.vic.gov.au/images/stories/committees/emc/2010_Election/submissions/14_Scytl_EMC_Inquiry_No.6.pdf .......... 20
Declaration of Terpsehore Maras (Appendix P-1) .......... 35
Election Advisory 2019-23. Sec. 13(1)(a)(iv)(1) .......... 26
Georgia Election Machine Glitch https://www.politico.com/news/2020/11/04/georgia-election-machine-glitch-434065 .......... 19
Hart InterCivic Verity Voting EAC Certification Test Report https://www.eac.gov/sites/default/files/voting_system/files/Hart%20Intercivic%20Verity%20Voting%202.4%20EAC%20Certification%20Test%20Report%20v1.1.pdf .......... 21
Hart Verity 2.4 https://www.eac.gov/sites/default/files/voting_system/files/Hart%20Intercivic%20Verity%20Voting%202.4%20EA .......... 24
Hurley, Brandon Hart 2.4 Report https://www.sos.texas.gov/elections/forms/sysexam/brandon-hurley-hart-2.4.pdf#search=hart%202.4.2 .......... 24
Hurley, Brandon Hart Report https://www.sos.texas.gov/elections/forms/sysexam/brandon-hurley-hart-2.4.pdf .......... 22
KNOWiNK Certification Letter https://www.sos.texas.gov/elections/forms/sysexam/knowink-poll-pad-certification-letter.pdf .......... 18
PART 602 - THE SECRETARY'S RECOGNITION OF ACCREDITING AGENCIES. https://www.ecfr.gov/current/title-34/subtitle-B/chapter-VI/part-602 .......... 31
Philly Ignores Election Security https://whowhatwhy.org/politics/elections/philly-ignores-cybersecurity-and-disability-access-in-voting-system-selection/ .......... 20

Secretary of State Election Laws https://www.sos.state.tx.us/elections/laws/advisory2019-23.shtml ............... 26
Senate Bill 12333 ............................................................ 26
SOE SOFTWARE, A SCYTL COMPANY. https://www.eac.gov/voting-equipment/registered-manufacturers/soe-software-scytl-company ............................................................ 19
State of Texas, Department of Information Resources. Contract for Services: Amazon Web Services, Inc. https://acrobat.adobe.com/link/review?uri=urn:aaid:scds:US:70191bd6-f30f-3bbd-92d9-ca55c3115659#pageNum=1 ............................................................ 19
Tex. Att'y Gen. Op. No. LO-88-62 (1988 ............................................................ 25
Texas Attorney General https://www2.texasattorneygeneral.gov/opinions/opinions/47mattox/lo/1988/pdf/lo1988062.pdf ............... 25
Texas Secretary of State. Hart 2.4 https://www.sos.texas.gov/elections/forms/sysexam/chuck-pinney-hart-2.4.pdf ............................................................ 25
Verity Voting Modification. EAC. https://www.eac.gov/sites/default/files/voting_system/files/Attachment%20F1%20-%20Hart%20Verity%20Voting%202.4%20Modification%20Test%20Plan%20As%20Run%20v1.2.pdf ... 22
Voting System Test Laboratory Program Manual, 2.0. https://www.federalregister.gov/documents/2015/04/14/2015-08567/voting-system-test-laboratory-program-manual-20-for-the-us-election-assistance-commissions-voting ............................................................ 17
What is Accreditation? Why Should University be Accredited? https://oir.harvard.edu/faq/what-accreditation-why-should-university-be-accredited ............................................................ 32
What is an Airgap and Why is it Important. https://www.rubrik.com/insights/what-is-an-air-gap-and-why-is-it-important ............................................................ 23

## Constitutional Provisions

Declaration of Independence ............................................................ 10
Due Process Clause ............................................................ 14
Equal Protection Clause ............................................................ 11, 14
Free Speech Clause ............................................................ 42
Guarantee Clause ............................................................ 16, 36
Right to Vote Clause ............................................................ 10, 16
Separation of Powers Clause ............................................................ 30
TEX. CONST. art. I § 1 ............................................................ 11
TEX. CONST. art. I § 2 ............................................................ 11, 16
TEX. CONST. art. I § 3 ............................................................ 11
TEX. CONST. art. I § 13 ............................................................ 45
TEX. CONST. art. I § 19 ............................................................ 16, 45
TEX. CONST. art. I § 29 ............................................................ 16
TEX. CONST. art. 2 § 1 ............................................................ 30
TEX. CONST. art. VI § 2 ............................................................ 13, 15, 33
TEX. CONST. art. VI § 2(c) ............................................................ 11
TEX. CONST. art. VI § 4 ............................................................ 13, 29, 31, 33, 38, 39
TEX. CONST. art. XVI § 1 ............................................................ 43

U.S. CONST. amend. 1 ..... 13
U.S. CONST. amend. 5 ..... 13
U.S. CONST. amend. 9 ..... 13
U.S. CONST. amend. 10 ..... 16
U.S. CONST. amend. 11 ..... 50
U.S. CONST. amend. 13 ..... 44
U.S. CONST. amend 13 § 1 ..... 16
U.S. CONST. amend. 14 ..... 13, 50
U.S. CONST. amend. 15 ..... 10, 15
U.S. CONST. amend. 17 ..... 10
U.S. CONST. amend. 19 ..... 10
U.S. CONST. art. 1 § 2 ..... 16
U.S. CONST. art. 1 § 3 ..... 16
U.S. CONST. art. 1 § 4 ..... 16
U.S. CONST. art. 1 § 4 cl. 1 ..... 16
U.S. CONST. art. IV § 4 ..... 16
U.S. CONST. art. VI ..... 16, 43

## Rules

Accardi Doctrine ..... 52
Doctrine of Stare Decisis ..... 15
Fed. R. Civ. P. Rule 15 ..... 14
Fed. R. Civ. P. Rule 15(a)(1)(B) ..... 2
Fed. R. Civ. P. Rule 201(d) ..... 17
Fed. R. Civ. P. Rule 57 ..... 13
Fed. R. Civ. P. Rule 65 ..... 14
Fed. Rule Evidence Rule 501 ..... 51

# I. INTRODUCTION

1. This action is an action to bring transparency, fairness, honesty, and exemplary quality to Texas elections and to hold responsible those government officials who violate the rights of Petitioner guaranteed by the U.S. and Texas Constitutions. Petitioner (and all Texas citizens) have a fundamental legal right to the clearly established principles of election equality, integrity, accurateness, honesty, and justice.

2. United States and Texas law recognizes the clearly established principle of one-citizen, one-vote. This is the bedrock of Texas law and the most cherished and valuable right of any Texas citizen, including Petitioner, guaranteed by the Texas Constitution. "The conception of political equality from the Declaration of Independence to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing - one person, one vote." *Reynolds v. Sims*, 377 U.S. 533, 558 (1964).

3. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Texas law adopts these fundamental principles. This case seeks to enforce these clearly established fundamental principles of Texas law.

4. Since at least the 2020 general election, Galveston County approved, adopted, and purchase computerized electronic voting systems (EVS) and equipment that was not properly certified as required by Texas legislative statutes, which then violates constitutional provisions for elections and voting. Substandard equipment is vulnerable and the true results of an election that relies upon unlawful equipment can never be known with full confidence.

5. The consent of the governed is the foundation of our Constitutional framework. Petitioner has a vested interest in protecting the quality, accuracy, and effectiveness of the individual votes cast by Petitioner to ensure the representative leaders in society are lawfully elected by the consent of the governed for the protection against tyranny and for healthy maintenance of our Republican form of government bestowed upon us by our ancestors and for the advantage of our descendants. Declaration of Independence, TEX. CONST. art. I §§ 1, 2, 3, and art. VI § 2(c).

6. "In any state-adopted electoral scheme, '[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another.'" (*Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1404 (N.D. Ga. 2019) (quoting *Bush v. Gore*, 531 U.S. at 104–05, 121 S.Ct. 525(2000)). Thus, it is the paramount duty of all government, with respect to election justice, to ensure that one-citizen, one-vote is clearly and proactively protected. This foundational principle of Texas law and its constitutional republic is at issue.

7. Petitioner does not consent to outsourcing our elections to third-party vendors through the use of Electronic Voting Systems (EVS). This renting out of election infrastructure compromises Petitioner's privacy information through the cast vote records and voter registration database.

8. Petitioner bases his standing on an issue of fundamental public importance: voting, and the right to have his individual vote legally counted. Petitioner alleges the uncertified, substandard systems and devices undermines the Elections by allowing unconstitutional votes to be counted:

> 9. "Those illegal votes may be decisive, Plaintiffs' urge, because it is not uncommon for state elections to be decided by a hair…An election implicating votes cast in contravention of the Delaware Constitution may have significant real-life consequences. Plaintiffs' concerns raise more than voting dilution. They strike at the voting right itself. Plaintiffs, like all voters, have a right to participate in free and fair elections under which all votes legally made—and only votes legally made—count. Regardless of how laudable the purpose behind the Vote-by-Mail Statute may be, the statute cannot introduce into the General Election votes prohibited under the Delaware Constitution. Plaintiffs adequately allege that it could. Accordingly, they have stated an injury in fact. *Michael Higgin and Michael Mennella v. The Honorable Anthony J. Albence, et.al*. No. 2022-0641-NAC and *Ayonne "Nick" Miles, Paul J. Falkowski, and Nancy M. Smith v. Delaware Department of Election, et.al*. No. 2022-0644-NAC. Sept. 14, 2022. (Memorandum Opinion).

10. Since the systems are uncertified and noncompliant to legislative standards, the election systems are compromised and/or performing substandard. Respondents neglected the safeguards (TEX. ELEC. CODE § 123.002, LOC. GOV. CODE § 81.022) to protect voters as required by legislative statutes, and the systems do not operate according to legislative conditions. (Texas Election Code, Title 8). The presence of substandard, uncertified equipment and devices separates voters into two groups: those who have had their votes illegally counted and those who have not (or those whose votes were counted legally, and those whose votes did not count due to them being cast illegally). This represents unequal protection under the Texas Constitution Article 1 section 3, Article VI section 2(c), and Fifteenth Amendment.

11. Petitioner seeks a Declaratory Order with a permanent injunction against Respondents to ensure the adherence to the constitutionally protected process of collecting and counting votes that ensures integrity and transparency. This is to require preservation of records, vacating the certification of the November 8, 2022, election results, the removal of third-parties in Texas elections, sequentially-marked paper ballots, hand-counted by residents of the state of

Texas, and following all Texas state election laws. (TEX. CONST. art. VI § 2 and 4, TEX. ELEC. CODE Chp. 64 and 65).

12. Additionally, Petitioner seek redress for the abuse and devastation of his Constitutionally-protected rights and protections inflicted by his acting officials. The true results of an election that relies upon uncertified, non-complaint equipment can never be known with full confidence, and Petitioner's fundamental right to vote will continue to be denied if EVS is used.

## II. JURISDICTION AND VENUE

13. Petitioner brings this cause of action under the U.S. Constitution First, Ninth, Fourteenth, and Fifteenth Amendments of the U.S. Constitution; original federal jurisdiction 42:1983cv Civil Rights Act - Civil Action for Deprivation of Rights, 42:1983vp Violation of Due Process and Equal Protection, 42:1985 Conspiracy to interfere with civil rights, 42:1986 Neglect of Duty, 42:1983dp Civil Right Denial of Due Process, 28:1331dp Violation of Due Process (federal question), 28:2201 Creation of Remedy, 28:1331vc Violation Constitutional Rights (federal question), and cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908) to challenge government officers during an "ongoing violation of federal law and [to] seek prospective relief" under the equity jurisdiction conferred on federal district courts by the Judiciary Act of 1789.

14. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 because this action seeks to protect civil rights under the First, Ninth, Fourteenth, and Fifteenth Amendments to the United States Constitution.

15. This Court has authority to grant declaratory relief based on 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP. This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 in a case of actual controversy in which any court of the United States, upon the

filing of appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

16. This Court has jurisdiction to grant injunctive relief based on 28 U.S.C. § 1343(a)(3) authority to do so under Federal Rule of Civil Procedure Rule 65.

17. This Court has jurisdiction to award nominal and compensatory damages under 28 U.S.C. § 1343(a)(4).

18. Petitioner amends this cause according to Fed. R. Civ. P. Rule 15(a)(1)(B) and Rule 65.

19. There exists a real, actual and justiciable controversy between Petitioner and Respondents requiring resolution by this Court.

20. Petitioner has no adequate remedy at law.

21. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events or omissions giving rise to Petitioner's claims occurred in this District and in which the Respondents are subject to the court's person jurisdiction with respect to such action.

22. This Court has personal jurisdiction over all Respondents because Respondents reside and are domiciled in the Galveston Division for the Southern District of Texas.

## III. NATURE OF THIS ACTION

23. This is an action in law and equity under the United States Constitution for violation of Petitioner's Equal Protection and Due Process rights by Respondents. Petitioner seeks only equitable, injunctive, and declaratory relief against Respondents for violation of Petitioner's clearly established Equal Protection and Due Process rights guaranteed to them by and through the United States Constitution. Petitioner does not seek damages.

24. The Constitution itself provides both the cause of action and the remedy. *Jacobs*, 290 U.S. at 16, 54 S.Ct. at 27; *San Diego Gas Electric Co. v. City of San Diego*,450 U.S. 621, 654-55, 101 S.Ct. 1287, 1305-06, 67 L.Ed.2d 551 (1981) (Brennan, J., dissenting); see also *Dickinson*, 331 U.S. at 748, 67 S.Ct. at 1384. *Azul Pacifico, Inc. v. City of Los Angeles*, 948 F.2d 575, 586 (9th Cir. 1991).

25. It would make no sense to provide for a constitutional right; require judges to preserve, protect, and defend that constitutional right; but prohibit judges from enforcing that constitutional right and from remedying a violation of that constitutional right. See also *Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652, 656 (1914) (if a remedy for the violation of a constitutional right is not provided, that right might as well be stricken from the Constitution). See *Dobbs v. Jackson Women's Health Organization*, No. 19-1392 (June 24, 2022) Justice Alito's opinion on the Doctrine of Stare Decisis. Constitutional rights are not simply grandiose, advisory principles. They are the foundation upon which our system of the orderly administration of justice is structured. (citing *State v. Johnson*, 821 S.W.2d 609 (Tex. Crim. App. 1991)), *State v. Terrazas*, 962 S.W.2d 38, 40 n.2 (Tex. Crim. App. 1998).

## IV. ISSUES PRESENTED

26. The specific issues brought before this court, which represent a constitutional crisis are:

a. The EVS are not lawfully certified in compliance with voting system standards TEX. ELEC. CODE § 122.001. This negates the Petitioner's lawful votes in elections. TEX. CONST. art VI § 2, U.S. CONST. amend. 15.

b. The EVS and their various devices are not lawfully certified, which causes the Petitioner to cast illegal ballots. 52 U.S.C. § 10307(a), Due Process Clause.

c. Since Texas officials presented uncertified EVS as certified, they abridged the Petitioner's federally-protected right to vote, negated Petitioner's consent of the governed, and affronted TEX. PEN. CODE § 37.03, § 37.09, § 37.10, 18 U.S.C. § 245, Ninth Amendments.

d. The expressed intent and effectiveness of the Petitioner's voice was negated as the uncertified EVS and their various devices are operating substandard. TEX. CONST. art. VI § 2, Right to Vote Clause, First Amendment.

e. The uncertified, substandard (EVS) are unreliable mechanisms for accurately collecting, retaining, and communicating the expression of the Petitioner's vote. It is not acceptable to injure the Petitioner's voice, consent, and will under the Constitutional premise of the consent of the governed. Declaration of Independence, Guarantee Clause, U.S. CONST. art. VI, Ninth Amendment.

g. Since the acting representative servants were unlawfully elected as a result of uncertified, substandard, unlawful vote collection devices they are not acting in their official capacity as they institute unconstitutional systems and mandates. TEX. CONST. art. I § 19 and § 29.

h. They would, then, be impersonating public servants. TEX. PEN. CODE § 37.11.

j. What is the Constitutional remedy for the usurpation of the Petitioner's role as the underlying governmental authority, and for forcing the Petitioner to participate in his own servitude through fraudulent policies, systems, and measures? TEX. CONST. art. I § 2 and 29, U.S. CONST. amend 13 § 1 and U.S. CONST. amend. 10.

k. What is the Constitutional remedy for the usurpation of the Texas Legislature, as the Constitutional regulator for elections? U.S. CONST. art. 1 §§ 2, 3, 4.

l. Elections in Texas shall not be rented out to third-party vendors, unelected "officials", foreign entities, and other actors seeking to usurp the premise of our Constitutional Republic. U.S. CONST. art. IV § 4.

## V. FACTUAL ALLEGATIONS

### A. Judicial Notice

27. Due to the dispositive nature of the facts presented in this case, judicial economy warrants the Court to take judicial notice of the public record contained in the petition and subsequent filings regarding electronic voting equipment and systems certifications published by the Texas Secretary of State, the Elections Assistance Commission, Department of Homeland Security, Center for Information Security, and communications from all Respondents' official email addresses. "It is not uncommon for courts to take judicial notice of factual information found on the world wide web. See *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n. 1 (6th Cir.2005) (taking judicial notice of a term defined on the website of the National Association of Securities Dealers, Inc.); *Schaffer v. Clinton*, 240 F.3d 878, 885 n. 8 (10th

Cir.2001) (taking judicial notice of information found in a political reference almanac and citing to the almanac's website). *Cf. Grimes v. Navigant Consulting, Inc.*, 185 F.Supp.2d 906, 913 (N.D.Ill.2002) (taking judicial notice of published stock prices found on the world wide web). Under the circumstances of this case, we conclude the district court abused its discretion by failing to take judicial notice of the actual earnings history provided by Northrop Grumman on the internet as required by Rule 201(d). (*O'Toole v. Northrop Grumman Co*rp., 499 F.3d 1218, 1225 (10th Cir. 2007))."

**B. Galveston County**

28. In 2018, the Secretary of State approved Hart Intercivic 2.0 for Galveston County. The contract indicates the county plans to acquire Hart's Verity 2.0 which includes the Verity Controller, Verity Touch, and Verity Touch w/Access which have firmware version 2.0.3. (*Appendix 1*). See *Appendix 2* for Report Of Review Of Hart Intercivic's Verity 2.0 Voting System.

29. December 17, 2018, Galveston County contracted with Hart Intercivic, Inc. for Verity 2.0. (*Appendix 3*).

30. Hart Intercivic, Inc. Verity 2.0 Certificate of Accreditation was performed by SLI Global Voting System Test Laboratories. (*Appendix 4*).

31. The Voting System Test Laboratory, SLI Compliance, that approved the certification is not an accredited laboratory in accordance with the Voting System Test Laboratory Program Manual ver. 2.0 effective May 31, 2015, page 38, Sec 3.6.1.[1] (See *Appendix 5* for Accreditation and Certifications).

[1] Voting System Test Laboratory Program Manual, 2.0. https://www.federalregister.gov/documents/2015/04/14/2015-08567/voting-system-test-laboratory-program-manual-20-for-the-us-election-assistance-commissions-voting Last Visited 08/02/22

32. Galveston County elections office claims the use of Hart Intervivic 2.4.2 for the specific election November 8,2022 in Galveston County. (*Appendix 6*)

1. ***KNOWiNK Poll Pads***

31. February 27, 2018, Galveston County contracted with KNOWiNK for Poll Pads. (*Appendix 7*).

32. The KNOWiNK Poll Pads were updated the night before the November 3, 2020, General Election.

33. Galveston County has not provided the version of KNOWiNK poll pad software that was utilized during the November 3, 2020.

34. KNOWiNK Poll Pads version 2.4.9 was certified by the SoS on January 23, 2020.[2] What version of software were the poll pads upgraded to the night before the November 3, 2020, General Election?

35. The purchase of these pads was contracted via Hart InterCivic under contract in 2018 with software, maintenance, and upgrade options.

36. The SoS's office did not inspect the KNOWiNK Poll Pad updated/modified changes as required by law.[3]

37. KNOWiNK performed an update the night before the election of November 3, 2020, similar to how an iPhone updates via a network connection.

38. Election officials throughout the country-from North Texas to Georgia-reported issues with poll pads from St. Louis-based KNOWiNK.

39. In some locations; the poll pads also activated ballots on voting machines which forced some voters to fill out selections on paper ballots.

---

[2] https://www.sos.texas.gov/elections/forms/sysexam/knowink-poll-pad-certification-letter.pdf Last visited 06/10/22

[3] See Tex. Elec Code 31.014

40. KNOWiNK poll pads went down November 3, 2020, across the state elections.

a. Marcia Ridley, Spalding County Board of Elections, attributed the problem to a vendor's 11th hour update per a representative for the election technology vendor, dominion Voting Systems, told her office that it had uploaded some kind of *"**update**"* the night before the election and that this had created the glitch.[4] *(emphasis added)*

2. ***SOE Software Corporation (d/b/a Scytl)***

41. Galveston County contracted with SOE Software Corporation (d/b/a Scytl) November 4, 2019. (*Appendix 8*)

42. In 2018, Scytl became a partner of Amazon Web Services which hosts their services on Amazon's cloud platform. This contract is implemented in a Software as a Service model using Amazon Web Services (AWS). Our election system infrastructure is currently housed under the same web services as the vendor who reports our election results. The EAC has posted that SOE Software, A Scytl Company is an inactive voting system registered manufacturer but does not provide dates of when active or inactive.[5] (See *Appendix 9* for Foreign Companies in Texas Infrastructure).

43. The state of Texas via Department of Information Resources (DIR) has contracted with Amazon Web Services, Inc.[6]

44. When Scytl was asked about the subject of potential risks, a spokeswoman answered flippantly "(Voters) don't have the ability to review the source code of their (online)

---

[4] https://www.politico.com/news/2020/11/04/georgia-election-machine-glitch-434065 Last visited 06/10/22
[5] SOE SOFTWARE, A SCYTL COMPANY. https://www.eac.gov/voting-equipment/registered-manufacturers/soe-software-scytl-company Last visited 08/01/22
[6] State of Texas, Department of Information Resources. Contract for Services: Amazon Web Services, Inc. https://acrobat.adobe.com/link/review?uri=urn:aaid:scds:US:70191bd6-f30f-3bbd-92d9-ca55c3115659#pageNum=1 Last visited 08/01/22

banking either." The company claims that a public examination of the documentation would jeopardize its business model.[7]

45. Two companies in particular that produce Commercial-Off-The-Shelf (COTS) are Huawei and Akamai, the latter of which is partnered with SCYTL and linked to Dominion Software. In the Election Whistleblower Affidavit Ms. Terpsehore Maras attests that the tallied votes on behalf of Dominion and, under contract with the Associated Press (AP), provide the results for reporting. (see *Appendix 10*) A very similar contractual relationship appears between Galveston County as noted above via SOE d/b/a Scytl. Maras Affidavit corroborates to the vulnerabilities from COTS which are still culpable to domestic, as well as foreign hacking.

**C. Hart Intercivic Verity**

46. No universal definition exists for what constitutes a "paper ballot", thus enabling vendors and their surrogates to characterize "machine-marked paper printouts from ballot marking devices" (BMD) as "paper ballots".

47. The machine-marked ballot is then counted on a separate scanner.

48. Most independent cybersecurity election experts caution against putting these insecure BMDs between voters and their ballots and instead recommend hand-marked paper ballots as primary voting system.[8]

[7] Comments from Scytl on the CORE report from the electronic voting solution used in 2010 Victorian Election, Version 1. https://www.parliament.vic.gov.au/images/stories/committees/emc/2010_Election/submissions/14_Scytl_EMC_Inquiry_No.6.pdf Last visited 08/01/22

[8] https://whowhatwhy.org/politics/elections/philly-ignores-cybersecurity-and-disability-access-in-voting-system-selection/ Last visited 06/21/22

49. The Verity Touch Writer DUO is a daisy chained configuration comprised of a Verity controller device, a proprietary cord, and is capable of connecting up to twelve BMD devices.[9]

50. The software application, Verity Relay, is a remote transmission software application that receives election data transmissions sent by Verity Scan device (tabulator) unit that scans the ballots, Verity Touch Duo scanner firmware, and digital scanner devices that are equipped with the Relay modem accessory. Per the contract obtained through PIA requests, it appears that Tarrant County purchased this capability.

51. Several aspects/components of Hart InterCivic Verity Voting are concerning when in close proximity to the internet.

52. One known county contract of the Hart InterCivic tabulators indicates that (9) nine of the add-on modems were purchased.

C. Voting Devices continued

| Component | Version | Description | Price breakdown per year | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Year 1 | | | Year 2 | | | Year 3 | | |
| | | | Unit Price ($) | Est. Qty. | Total ($) | Unit Price ($) | Est. Qty. | Total ($) | Unit Price ($) | Est. Qty. | Total ($) |
| Relay Modem Kit | | Modem kit required for electronic transmission from Verity Scan. May be shipped separately pending customer carrier selection; invoicing and testing will be independent if shipped separately. | $ 500 | 9 | $ 4,500 | | | | | | |
| AutoBallot Kit | | Barcode scanner kit for automatic Verity access code creation from VR/electronic poll book data | $ 419 | 400 | $ 167,600 | | | | | | |
| License & Support for Verity Hardware | | Annual License & Support Fee | $ 471,880 | 1 | $ 471,880 | $ 471,880 | 1 | $ 471,880 | $ 471,880 | 1 | $ 471,880 |
| TOTAL | | | $ | | 13,303,792 | $ | | 471,880 | $ | | 471,880 |

[9] Certification Test Report, Verity Voting. https://www.eac.gov/sites/default/files/voting_system/files/Hart%20Intercivic%20Verity%20Voting%202.4%20EAC%20Certification%20Test%20Report%20v1.1.pdf See page 21 Last visited 06/21/22

a. Per Hart contract, a modem kit is required for electronic transmission from Verity Scan.
b. On August 1, 2019, the SoS Office sent a letter of approval for the above contract, which included the add-on modems, to Heider Garcia. (Relay Modem Kit).
c. The Relay Modem Kit is listed as required by Hart for the ENR to function but is not a listed component on the SoS examination or on the certification.

53. Brandon Hurley, a SOS appointed examiner, pointed out the connectivity capabilities of this make and version of voting system in his examination report.[10]

54. The exact component that allows these connectivity capabilities was not identified in Hurley's report. The visuals of Verity Voting, however, as well as several item descriptions in SLI Compliance's testing report could be points of vulnerability given the lack of compliance with VVSG.[11] See 1.6.1 Block Diagram:

[10] https://www.sos.texas.gov/elections/forms/sysexam/brandon-hurley-hart-2.4.pdf
[11] https://www.eac.gov/sites/default/files/voting_system/files/Attachment%20F1%20-%20Hart%20Verity%20Voting%202.4%20Modification%20Test%20Plan%20As%20Run%20v1.2.pdf Last visited 06/21/22




**12**

55. "Air-gapping" measures are intended to prevent internet/network access. Several experts have presented testimonies and demonstrations that contradict "air-gapping" as fail safe.

56. "Most traditional air gaps involve what is popularly known as a "sneakernet," a physical method of transferring data, e.g., a Wi-Fi dongle or USB port."[13]

> At this point, human nature takes over. Even well-intentioned users will accidentally leave doors unlocked or USB ports unguarded. They may get lazy and neglect to follow security procedures. One worrisome example of this risk occurs on merchant ships and naval vessels, whose mechanical control and navigation systems are air-

---

[12] https://www.eac.gov/sites/default/files/voting_system/files/Hart%20Intercivic%20Verity%20Voting%202.4%20EAC%20Certification%20Test%20Report%20v1.1.pdf Last visited 06/21/22.

[13] https://www.rubrik.com/insights/what-is-an-air-gap-and-why-is-it-important Last visited 06/21/22

> gapped because, well, they're on a ship and generally not connected to the Internet (though even that is starting to change.) Once a ship is docked, however, a malicious actor can gain access to the ship and use a USB stick to insert malware into the system. When a ship undergoes maintenance, and hundreds of semi- or non-vetted workers are aboard the vessel while the regular crew is away, it's easy to see how an air gap will fall apart.

**2.5 Materials**

Items identified in the table reflect materials required to perform hardware, software, telecommunications, security, accuracy and integrated system tests in a manner that reflects real world use and needs.

The following test materials are required for the performance of testing including, as applicable, test ballot layout and generation materials, test ballot sheets, and any other materials used in testing.

- Ballots & blank ballot grade paper
- Thumb drives
- USB dongles
- Ballot marking pens
- Printer paper rolls

[14]

57. Further, Brandon Hurley noted an *over vote issue* "…. bring up a warning when more than one candidate can be voted for in a specific race. However, when you make your selection to continue, there is an automatic de-selection of another candidate chosen rather than allowing the voter to decide who gets deselected……. led to a voter confusion…. casting of an unintended vote without voter's knowledge."[15]

**D. Hart Intercivic Ballot Issues**

58. Hood County District Attorney Matthew Mills contacted Attorney General Ken Paxton requesting clarification of ballot numbering issues associated with the use of Hart InterCivic voting systems.

---

14 https://www.eac.gov/sites/default/files/voting_system/files/Hart%20Intercivic%20Verity%20Voting%202.4%20EA
Last visited 06/21/22

15 https://www.sos.texas.gov/elections/forms/sysexam/brandon-hurley-hart-2.4.pdf#search=hart%202.4.2

59. Mills pointed out the following issues with electronic voting systems, specifically Hart's hybrid voting system.[16]

a. Questions arising about compliance with election code.[17]
b. Who has the authority to select the method for numbering ballots?

60. Texas Secretary of State legal director of the elections division informed election administrators of two ways to comply.[18]

a. First method: Pre-print numbers on blank ballot stock, email deems "simplest and easiest way"
b. Second method: The voting machine generates random numbers on blank ballots.

61. Mills poses (3) three questions regarding the ballot numbering issues with Hart.[19]

62.

The relevant language in § 52.062 is the following: "[t]he ballots prepared by each authority responsible for having the official ballot prepared." Does this indicate that using pre-printed numbers on blank ballot stock is the only legal way to comply with the statute? Or does the machine generation method also comply with the numbering requirement?

a. A memorandum from a staff attorney, Chuck Pinney, to the Director of Elections, Keith Ingram, dated May 18, 2020, states machine-generated numbering on the Hart Verity 2.4 system complies with Texas ballot numbering requirements.
b. According to Elec. Code Ann § 31.032 the election commission has the authority to appoint an election administrator as well as suspend or terminate the administrator under § 31.037. Under § 31.039, the commissioners court maintains authority over various budgetary issues including salary and staffing.
    i. A 1988 Tex. Att'y Gen. Op. No. LO-88-62 (1988)[21] the AG's office opined that election administrators should be "largely independent of both the commissioners court and election commission.", essentially stating that the elections commission does not possess the authority to suspend an elections administrator.
    ii. Senate Bill 12333 from 2011 may render the AG opinion moot which gave new authority to elections commissions to suspend elections administrators.

[16] https://katychristianmagazine.com/wp-content/uploads/2021/12/Request-for-Opinion-on-Ballot-Numbering_RQ-0405-KP_status-Borgelt-letter.pdf Last visited 06/24/22
[17] See Tex. Elec Code § 52.062
[18] https://www.sos.texas.gov/elections/forms/sysexam/chuck-pinney-hart-2.4.pdf See page 3 Last visited 06/22/22
[19] https://katychristianmagazine.com/wp-content/uploads/2021/12/Request-for-Opinion-on-Ballot-Numbering_RQ-0405-KP_status-Borgelt-letter.pdf See page 12 Last visited 06/22/22
[21] https://www2.texasattorneygeneral.gov/opinions/opinions/47mattox/lo/1988/pdf/lo1988062.pdf Last visited 06/22/22

iii. In 1997, the San Antonio Court of Appeals provided a different conclusion in Krier v. Navarro, 952 S.W.2d 25. The elections administrator was greatly restricted in the exercise of his duties from "…selecting polling places and early voting sites, issuing orders calling for elections, adopting a voting system, selecting election judges and phone bank clerks…leasing voting systems…The evidence presented establishes that the governmental functions performed by Navarro were not exercised 'largely independent of the control of others."*Id*

Assuming the reasoning in *Krier* is correct, is the method of ballot numbering akin to

Chapter 52 of the Election Code contains various provisions for the preparation of ballots. Under § 52.001, ballots are for the "vote in *an election*." (emphasis added) Does the suggestion in the director's advisory that jurisdictions may conduct subsequent elections with ballot numbers starting higher than "1" comply with § 52.062? Or should ballots begin with the number "1" for each election?

c. On October 23, 2019, Keith Ingram of the Texas Secretary of State office published Election Advisory 2019-23. Sec. 13(1)(a)(iv)(1)[22]. The director suggests that jurisdictions *MAY* start with the number "1" and then start subsequent elections with ballots with much higher starting numbers. *(Emphasis added)* See below Election Advisory 2019-23, which reads as follows:

iv. The jurisdiction can pre-number the ballots and split them into batches for each election, with each batch beginning with a number that ends in the number "1". Those batches must be no smaller than units of 100, though a jurisdiction could batch in larger units if needed (1000, 10,000, etc.).

1. **Example:** For the November election, the jurisdiction could use ballots 1-1500, and for the May election that jurisdiction could then use ballots 1501-2400, and for the following November election the jurisdiction could use ballots 2401-4200, etc.

63. Is the Director of Elections advising jurisdictions to ignore Tex. Elec. Code § 52.001?

64. Hood County Attorney Matthew Mills raises three very specific questions concerning the numbering of the ballots in which Hart InterCivic voting systems does not comply in accordance with Tex. Elec Code.[23]

[22] https://www.sos.state.tx.us/elections/laws/advisory2019-23.shtml Last visited 06/22/22

[23] See Tex. Elec Code § 52.062, § 52.006, § 51.007, § 51.008, § 51.10, § 62.007 and § 62.009

65. In response to Mills' request for an opinion regarding numbering of the ballots, Roger B. Borgelt of Borgelt Law provided an opinion to the Attorney General's office on July 29, 2021.[24]

66. The Texas legislature is constitutionally required to provide for ballot numbering in Texas.[25]

67. The Texas legislature passed the consecutive ballot number statute 35 years ago[26] and provides integrity of the ballot by detecting counterfeited, missing, or duplicate ballots.

68. Tex. Elec Code § 52.062 requires consecutive ballot numbering consecutively beginning with number "1" and is referenced in (6) six other Election Code provisions, therefore making it an established mandatory procedure.

**a. § 51.006. PREPARING BALLOTS FOR DISTRIBUTION**

> The authority responsible for distributing election supplies shall package and seal each set of ballots before their distribution and shall mark the package with the number of ballots enclosed and the range of the ballot serial numbers.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1991, 72nd Leg., ch. 203, Sec. 2.47; Acts 1991, 72nd Leg., Ch. 554, Sec. 18, eff. Sept. 1, 1991.

**b. § 51.007. RECORD OF BALLOT DISTRIBUTION**

> (a) As soon as practicable after the ballots are packaged for distribution, the authority responsible for distributing election supplies shall prepare a record of the number of ballots and the range of serial numbers on the ballots to be distributed to each presiding judge and the early voting clerk.
> (b) The authority shall preserve the record for the period for preserving the precinct election records.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1991, 72nd Leg., ch. 203, Sec. 2.48; Acts 1991, 72nd Leg., Ch. 554, Sec. 19, eff. Sept. 1, 1991.

---

[24] https://katychristianmagazine.com/wp-content/uploads/2021/12/Request-for-Opinion-on-Ballot-Numbering_RQ-0405-KP_status-Borgelt-letter.pdf See page 3 Last visited 06/22/22
[25] See TEX. CONST. art. VI § 4
[26] See Tex. Elec Code § 52.062

**c. § 51.008. SUPPLEMENTING DISTRIBUTED BALLOTS**

(a) The authority responsible for distributing election supplies shall retain a reserve of ballots to supplement the distributed ballots and on election day may reallocate previously distributed ballots among the polling places.
(b) The authority shall enter on the record of ballot distribution the number of ballots reserved and the number of ballots distributed from the reserve to each polling place. The range of serial numbers on the ballots shall be included in the record.
(c) If distributed ballots are reallocated, the authority shall indicate the reallocation on the record of ballot distribution and shall issue a receipt to each presiding election judge showing the number of ballots and the range of serial numbers on the ballots taken from the judge's polling place for redistribution. Each presiding judge shall indicate on the ballot register any reallocation of ballots affecting that polling place.
(d) The authority shall retain the undistributed reserve for the period for preserving the precinct election records.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

**d. § 51.010. FAILURE TO DISTRIBUTE OR DELIVER SUPPLIES**

(a) A person commits an offense if the person is responsible for distributing election supplies for an election and intentionally fails to distribute any of the supplies by the deadline prescribed by Section 51.004(b).
(b) A person commits an offense if the person is entrusted with the delivery of election supplies for use at polling places and intentionally fails to deliver any of the supplies within the time specified by the person who entrusted the delivery to the person.
(c) An offense under this section is a Class C misdemeanor.

Acts 1985, 69th Leg., Ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1997, 75th Leg., Ch. 864, Sec. 46, eff. Sept. 1, 1997.

**e. § 62.007. EXAMINING BALLOTS**

(a) An election officer shall unseal the ballot package, remove the ballots, and examine them to determine whether they are properly numbered and printed.
(b) An unnumbered or otherwise defectively printed ballot shall be placed in ballot box no. 4.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

**f. § 62.009. DISARRANGING BALLOTS FOR VOTERS' SELECTION**

> (a) As needed for voting, an election officer shall disarrange a supply of the ballots so that they are in random numerical order.
> (b) The disarranged ballots shall be placed face down on a table in a manner preventing an election officer or other person from ascertaining the number of a ballot selected by a voter.
> (c) The provisional ballots shall be placed separately from the regular ballots.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1997, 75th Leg., ch. 1078, Sec. 6, eff. Sept. 1, 1997; Acts 2003, 78th Leg., ch. 1315, Sec. 22, eff. Jan. 1, 2004.

69. As noted above in Election Advisory 2019-23, the SoS notates that jurisdictions using ES&S and Hart InterCivic systems does not comply with § 52.062.[27]

i. **ES&S ExpressVote – Tracking Ballot Numbers Through the ExpressVote Activation Card Printer/ExpressLink Software**

1. Each ExpressVote Activation card printer that is assigned to a specific polling place will be given a two to three digit alpha code. This code will be printed on each Ballot Card as it is generated for the voter.
2. In addition to the alpha code, each polling place will print a randomly generated serial number between 1 to 99,999 on the card along with the identifying information related to the election.
3. The system will generate a report showing which ballots (based on their serial number) were used at each location. This report must be retained with your precinct election records.
4. For tracking purposes, you will continue to have the presiding judge fill out the Ballot Register (PDF), and the original and duplicate forms will be returned in the applicable envelopes. The ballots shall be tracked, distributed, and retained just as you would with a traditional pre-printed full ballot in accordance with Sections 51.006, 51.007, 51.008 with the exception of notating the serial number of the ballot ranges.

70. Randomized ballot numbering procedures will cause jurisdictions to violate several election codes.[28]

71. In the same advisory[29] the SoS Office does not advise how jurisdictions will comply with the following Tex. Elec Codes:

> § 51.010 – how will officials distribute serial numbered range records to polls.
> § 62.007 - how officials at polls determine if ballots are properly numbered.
> § 62.009 – how will election judges place numbered ballots face down.

72. Allowing voting machines to generate random text values on ballots causes confusion and violates several Tex. Elec Code statues, and these violations are punishable by law.[30]

---

[27] https://www.sos.state.tx.us/elections/laws/advisory2019-23.shtml Last visited 06/22/22
[28] See Tex. Elec Code § 52.062, 51.006, 51.008
[29] https://www.sos.state.tx.us/elections/laws/advisory2019-23.shtml Last visited 06/22/22
[30] See Tex. Elec Code § 51.010(c), § 51.007(b), 51.008 (d) and 13 TAC § 7.125(a)(10) and Tex. Penal Code § 37.10(3)

73. The Legislative Branch did not provide the SoS the authority to ignore Tex. Election code nor the authority to advise to jurisdiction to do the same. In regards to numbering of the tickets/ballots. No authority grants the SoS the ability to *interpret* Tex. Elec. Code for the following:

a. Advising jurisdictions to ignore Tex. Elec Code § 52.062.
b. Hindering jurisdictions' ability to "detect and punish fraud and preserve the purity of the ballot box. ….as randomized ballot numbers prevent election judges from recording, validating, and tracking the official ballot serial number ranges they were in possession of, personally distributed, and retained at their polling locations, again violating TEX. CONST. art. VI § 4."[31]

74. The Election Code specifically assigns the SoS duties[32] to ensure uniform compliance but does NOT provide the SoS with "discretion" to advise any jurisdictions to ignore or refuse to comply with the Election Code.[33]

75. By following the lead of the SoS, Respondents disregarded Tex. Elec. Code violating the Separation of Powers Clause of art. 2 § 1 of the Texas Constitution.

76. The Texas Constitution provides that only the Legislature can suspend laws, not the SoS, a member of the Executive Branch.

77. These actions are in contradiction to the Election Code and its interpretation and application to ensure uniformity across the state of Texas in all voting systems.[34]

78. By suspending laws and authorizing exceptions to the Election Code, the SoS have and continue to unlawfully modify election law, and the Respondents followed SoS lead rather that adhere to the law.[35]

---

[31] https://katychristianmagazine.com/wp-content/uploads/2021/12/Request-for-Opinion-on-Ballot-Numbering_RQ-0405-KP_status-Borgelt-letter.pdf Last visited 06/22/22
[32] See Elec. Code § 31.003
[33] See Elec. Code § 52.062, § 51.010(c), § 51.007(b), 51.008 (d)
[34] See Tex. Elec Code § 122.032
[35] See Tex. Elec Code § 276.019. UNLAWFUL ALTERING OF ELECTION PROCEDURES - A public official or election official may not create, alter, modify, waive, or suspend any election standard, practice, or procedure mandated by law or rule in a manner not expressly authorized by this code.

79. The Legislature provided a very clear and specific mandate: prepare and distribute detailed and comprehensive written directives and instructions that comply with the Election Code to state and local election authorities.[36]

80. The Respondents' defiance of Election Code knowingly caused the Petitioner, a registered voter of Texas to:

a. Cast a vote under false pretense[37]
b. Prevent a cast of a legal vote in which Petitioner is eligible to vote.[38]
c. Cause the ballot not to reflect the intent of the Petitioner/voter[39]
d. Respondents committed the offense while acting in the capacity of an elected official.[40]

81. Randomized ballot numbering generated by Hart InterCivic Verity 2.4 results in multiple violations of election law, the U.S. and Texas Constitutions, and the Texas Penal Code.

## VI. ARGUMENTS AND AUTHORITIES

82. "Accreditation is the independent evaluation of conformity assessment bodies against recognized standards to carry out specific activities to ensure their impartiality and competence. Through the application of national and international standards, government, procurers and consumers can have confidence in the calibration and test results, inspection reports and certifications provided."[41]

83. Accreditation and certification are used in many aspects of our society. For example, universities and colleges are accredited by private agencies known as an accrediting agency or accreditor. The Department of Education administers and approves these accreditors

---

[36] See Elec. Code § 31.003
[37] See Tex. Elec Code 273.013(1)
[38] See Tex. Elec Code 273.013(2)
[39] See Tex. Elec Code 273.013(6)
[40] See Tex. Elec Code 273.013(b)(1)
[41] About ILAC © 2022. https://ilac.org/about-ilac

under CFR Title 34, § 602.[42] Accreditation for the private accreditors is for five years; accreditors must reapply for renewal two years before accreditation lapses.

84. There are currently over 60 accreditors approved for accrediting our nation's colleges and universities[43]. The Harvard University of Institutional Research website explains:

> Accreditation…4 main purposes: (1) to assure quality to the public, (2) to ease student transfer between institutions by signaling quality, (3) provides institutions with access to federal financial aid, and (4) certifies a graduate's credentials to employers.[44]

85. If colleges and universities happened to not be accredited due to an accreditor's lack of credentials, the public response would inspire demands for action loudly across the country – as should the lack of VSTL accreditation.

86. Texas codified HAVA. It is the intent of the legislature that the application of this code and the conduct of elections be uniform and consistent throughout this state to reduce the likelihood of fraud in the conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted. TEX. ELEC. CODE § 1.0015. Election officials and other public officials shall strictly construe the provisions of this code to effect the intent of the legislature under Section 1.0015. TEX. ELEC. CODE § 1.003(a-1).

87. Specifically, Texas Election Code § 122.001(a)(3) states "operates safely, efficiently, and accurately and complies with the voting system standards adopted by the Election Assistance Commission," and § 122.001(a)(4) stipulates "is safe from fraudulent or unauthorized manipulation." Under HAVA 2002 (42 U.S.C. §15371(b)) "requires that the EAC provide for the

---

[42] PART 602 - THE SECRETARY'S RECOGNITION OF ACCREDITING AGENCIES. https://www.ecfr.gov/current/title-34/subtitle-B/chapter-VI/part-602

[43] Accreditor Federal Recognition Process Steps. https://www2.ed.gov/admins/finaid/accred/accreditor-federal-recognition-process-steps.pdf

[44] What is Accreditation? Why Should University be Accredited? https://oir.harvard.edu/faq/what-accreditation-why-should-university-be-accredited

accreditation and revocation of accreditation of independent, non-federal laboratories qualified to test voting systems to Federal standards".

88. Respondents made a choice to approve, adopt, and purchase uncertified, non-compliant election voting equipment that do not adhere to the standards set forth in Title 8 of the Texas Election Code and violate the legislative intent. (TEX. ELEC. CODE §§ 1.0015, 1.014, 123.001, and 123.002, *Appendix 5*).

89. Respondents, knowing the law, were knowingly negligent in their duties and have violated constitutional provisions and statutes through their ignoring the expiration of certifications of accreditation of VSTLs or the lack of legal signature per HAVA thereby allowing voting machines to be used in elections since 2020 violating TEX. ELEC. CODE § 122.032, TEX. ADMIN. CODE § 81.60 and § 81.61, which are violations of TEX. CONST. art. VI §§ 2 and 4 and 52 U.S.C. 20971, First, Fourteenth, and Fifteenth Amendments .

90. Respondents acting under the color of law allowed for the use of uncertified, non-compliant voting system equipment, software, and modifications for elections occurring in Galveston County in 2021 and 2022 violating TEX. ELEC. CODE §§ 122.001, 122.032, 123.001, 123.002, TEX. ADMIN. CODE § 81.60 and § 81.61, which are violations of TEX. CONST. art. VI §§ 2 and 4, and 52 U.S.C. 20971, First, Fourteenth, and Fifteenth Amendments.

91. Furthermore, election officials must preserve election information and such information must be transparent to the citizens if a constitutional republic are to be upheld. 52 U.S.C. § 20701, TEX. ELEC. CODE § 1.013. Electronic, software, and firmware updates render election records unrecoverable.

92. Merely going through the motions of voting is not voting; furthermore, electing the person(s) one chooses to be a representative servant in official capacity is not "mere voting," but

the highest duty of all citizens striving for the preservation of the Republican form of government through the consent of the governed (U.S. CONST. art. IV § 4).

93. Pretending to vote on systems that do not meet the standards of law is much like pretending to get educated at an uncertified university. While everyone attending this university may have injury, the individual's specific injury will be unique to the individual's specific life and having the lack of genuine credentials effects the individual's employability, finances, health, and overall well-being.

94. Similarly, Respondents caused injury to Petitioner by causing Petitioner to vote on uncertified, non-compliant systems and devices. Petitioner's vote lacked the credentials and was caused to be cast illegally (TEX. ELEC. CODE § 276.013), which has led to the installation of representatives rather than a true election by the people of the people and for the people.

95. According to Legislative intent, Petitioner's illegal votes should not have been counted (TEX. ELEC. CODE § 1.0015)? This is deprivation of the constitutionally and federally protected fundamental right to vote.

96. Respondents knowingly approved voting system/equipment, software, and modifications unlawfully, which deprives Petitioner constitutionally-protected interests without due process of law.

97. Such deprivation was arbitrary, capricious, based on ignorance without inquiry into facts, and in violation of the Texas and Federal laws and other applicable laws. (See Accardi Doctrine). Such deprivation violates the U.S. Constitution thereby depriving Petitioner civil rights regarding casting a "legal" vote. TEX. PEN. CODE § 37.03, § 37.10.

98. The Respondents have adopted, approved, and purchased an illegal, unconstitutional form of vote collection, which has disenfranchised millions of voters who have been caused to vote illegally.

99. Petitioner was harmed and continue to be irreparably harmed by these unlawful acts, including by suffering forced contracts with representatives through deceptive practices and fraudulent certifications.

**A. Declarations From Authorities**

100. Regardless of the brand, make, or model of the electronic voting systems and devices implemented and approved by County Officials for elections, none of them adhere to the Voting System Standards codified by the Texas Legislature. TEX. ELEC. CODE Title 8. For a wealth of resources discussing years of unfaithful standards, manipulation, and vulnerability.[45] As such, the injury alleged is not only possible, but increasingly imminent as Respondents intend to certify the results from this past election and continue to use EVS and devices for upcoming elections.

1. *Declaration of Terpsehore Maras (Appendix 10)*

101. The Affidavit of Terpsehore Maras attests that the 2017 elections is null and void due to lack of Election Assistance Commission (EAC) certifications of Voting Systems and the Voting System Test Laboratories (VSTL) used to certify the Voting Systems. (APPENDIX 10) [46]

> RULE: Section 231(b) of the Help America Vote Act (HAVA) of 2002 (*42 U.S.C. §15371(b)*) requires that the EAC provide for the accreditation and revocation of accreditation of independent, non-federal laboratories qualified to test voting systems to Federal standards. Generally, the EAC considers for accreditation those laboratories evaluated and recommended by the National Institute of Standards and Technology (NIST) pursuant to HAVA § 231(b)(1). However, consistent with HAVA §

[45] see Cohn, Jennifer. (2018) "Handout: The truth about our computerized election systems; Recommendations for advocating for hand marked paper ballots" https://jennycohn1.medium.com/handout-the-truth-about-our-computerized-election-systems-c4a17539de71
[46] https://storage.courtlistener.com/recap/gov.uscourts.wied.92717/gov.uscourts.wied.92717.9.13.pdf

231(b)(2)(B), the Commission may also vote to accredit laboratories outside of those recommended by NIST upon publication of an explanation of the reason for any such accreditation.

102. CONCLUSION: This affidavit presents unambiguous evidence of:

a. Foreign interference
b. Complicit behavior by the previous administrations from 1999 to present to hinder the voice of the American people
c. Knowingly and willingly colluding with foreign powers to manipulate the outcome of the 2020 election
d. Foreign nationals, through investments and interests, assisted in the creation of the Dominion software
e. Akamai Technologies merged with a Chinese company that makes and distributes the COTS components of election machines
f. US persons holding an office and private individuals knowingly and willingly oversaw fail safes to secure our elections
g. The EAC failed to abide by standards set in HAVA ACT 2002
h. The IG of the EAC failed to address complaints since their appointment regarding vote integrity
i. Christy McCormick of the EAC failed to ensure that EAC conducted their duties as set forth by HAVA ACT 2002
j. Both Patricia Layfield (IG of EAC) and Christy McCormick (Chairwoman of EAC) were appointed by Barack Hussein Obama and have maintained their positions since then
k. The EAC failed to have a quorum for over a calendar year leading to the inability to meet the standards of the EAC.
l. AKAMAI Technologies and Hurricane Electric raise serious concerns for NATSEC due to their ties with foreign hostile nations

103. Kari Lake, et al. v. Katie Hobbs, Arizona Secretary of State (case 2:22-cv-00677-JJt)[47] contains multiple Declarations by experts attesting to problems with the supply-chain (Shawn Smith), remote access operations for the unlawful entry and purposes into computer networks (John R. Mills), and DEFCON Reports (Douglas Logan). See *Appendix 9* for foreign countries involved in election infrastructure, manipulation, and supply chain management.

B. **Failures, Neglect, and Offensive Violations**

UNDER 42 U.S.C. §1985, 42 U.S.C. §1986, GUARANTEE CLAUSE,

[47] https://files.ttttexas.com/case/TX_SOS_Election_Violation_References See Declaration of Shawn Smith

28 U.S.C. §1367

104. Respondent County Officials: Defendants Dwight D. Sullivan, Galveston County Clerk; Mark Henry, Galveston County Judge; Darrell Apffel, Galveston County Commissioner Precinct 1; Joe Giusti, Galveston County Commissioner Precinct 2; Stephen D. Holmes, Galveston County Commissioner Precinct 3; and Robin Armstrong, Galveston County Commissioner Precinct 4; have violated state and federal law with violations that include:

a. Approving and adopting operating systems lacking proper certifications.
b. Allowing for unmonitored network communications.
c. Restricting access to public information.
d. Concealing and refusing to release voting system software/firmware versions.
e. Once informed of any problematic issues with voting systems/software, proceeded with elections without informing the public nor issued any public statement as the malfunction continued to affect casting of ballots during the election.
f. Under the advice of SoS, violated Tex. Elec Code § 52.062 requiring the numbering of ballots, which produced a violation of TEX. CONST. art. I § 28.
g. Under the advice of SoS, violated TEX. CONST. art. VI § 4 by providing for numbering of tickets specifically reserved for the Legislative Branch.
h. Impeded election workers and staff from the ability to "detect and punish fraud and preserve the purity of the ballot box." Randomized ballot numbers prevented recording, violating, and tracking the official ballot serial number ranges in possession of, personally distributed, and retained at polling locations, violating TEX. CONST. art. VI § 4.
i. Set off a chain reaction of violations of several ballot numbering statues that are not only illegal but also criminally punishable in the election code. TEX. ELEC. CODE § 51.010(c), 51.007(b), 51.008(d), and 13 TAC § 7.125(a)(10), and TEX. PEN. CODE § 37.10(3).
j. Certified not only the November 3, 2020 election results but every subsequent election after receiving evidence from constituents that cast doubt on the integrity of the ballot.

k. Knowingly remiss in their duties, acting under the color of law, and are in violation of Texas statute. These officials did not acknowledge the expiration of certification of accreditations of VSTLs nor the lack of legal signature per HAVA, thereby continuing to allow these voting machines to be used in county elections since 2020. What is confirmed is that SLI Compliance was ***Not Accredited*** VSTL. *(Emphasis added)*

l. Under the guise of 'protecting the vote', County Officials with undisputed knowledge of HAVA have nefariously sought to suppress the violations of federal and state law from Petitioner. After multiply attempts in the form of PIA(s), the county actors have attempted to conceal public information regarding the voting equipment and software utilized in the election process.

m. Officials and employees, under the directive of the SoS office, withheld from the public that the malfunctions of the voting equipment/software were not resolved but were, in fact, affecting multiply counties during the elections.

n. Acting under the color of law, administered elections with non HAVA complaint voting system equipment, software, and modifications for the state of Texas that have been used in state and federal elections from 2020 through 2022, violating TEX. ELEC. CODE §§ 52.062, 122.032, 123.001, 123.002, TEX. ADMIN. CODE §§ 81.60 and § 81.61, and are also apparent violations of TEX. CONST. art. VI § 2 and § 4 and federal 52 U.S.C. 20971.

o. By Officials' own admission via the State of Texas' Secretary of State website regarding education of the HAVA, they knowingly certified voting system equipment, software, and modification without a valid VSTL accreditation from the EAC.

p. Respondents' duplicitous activity and arrangement seem to only exist for a singular self-serving purpose of covering misdeeds and offenses.

q. Respondents have, by their actions, demonstrated an intention to continue to allow these same failures to be repeated in future elections.

## C. Remediable Rights

105. It is our constitutional duty to invoke our authority as free persons to petition and address this court regardless of the outcome of this complaint.

106. 'When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right.' *Baker v. Carr* 369 US 186, 208 (1962) citing 364 U.S. at 347, 81 S.Ct. at 130.57.

107. "The right to vote is a "natural right" in our society. *Thomas v. Groebl*, 147 Tex. 70, 212 S.W.2d 625, 630 (1948). This right and the integrity of the voting process must be zealously protected." *Thompson v. Willis*, 881 S.W.2d 221, 225 (Tex. App. 1994).

108. "The right to vote is the "preservative of all rights." *Shelby County v. Holder*, 570 U.S. 529, 566 (2013) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886))." *In re State*, No. 20-0394, at *10 n.33 (Tex. May 27, 2020).

109. It is an undeniable feature of our political system and tradition that an "individual's right to vote . . . is protected as a fundamental right." *Veasey v. Perry*, No. 13-CV-00193, 2014 WL 5090258, at *41 (S.D.Tex. Oct. 9, 2014), stayed by 769 F.3d 890 (5th Cir. (Tex.) Oct. 14, 2014) (citing *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992); *Kusper v. Pontikes*, 414 U.S. 51, 55 (1973)). *Cuellar v. Maldonado*, No. 13-14-00491-CV, at *7 (Tex. App. Mar. 5, 2015).

110.

> "Although the terms "citizens" and "residents" are perhaps more precise (or less confusing) in cases involving a public duty, these types of cases reflect that community stakeholders — citizens, residents, voters, and taxpayers — are injured when their local governments do not follow the law. Where a public duty is at stake, a plaintiff's membership in the community provides the necessary standing to bring a cause of action to ensure a local government follows the law. See *Arneson v. Bd. of Trustees of Employees'*

> *Retirement System of Ga*., 257 Ga. 579, 579-580 (1)-(3) (361 SE2d 805) (1987) at 580 (2) (c) ("Public responsibility demands public scrutiny.")… Voters may be injured when elections are not administered according to the law or when elected officials fail to follow the voters' referendum for increased taxes to fund a particular project, so voters may have standing to vindicate public rights. See, e.g., *Barrow v. Raffensperger*, 308 Ga. 660, 667 (2) (b) (842 SE2d 884)(2020) (plaintiff's claim that cancellation of election violated the law was a sufficient injury to a voter, even without an injury that was "special" to her, for voter to have standing to bring mandamus claim to compel election); *Rothschild v. Columbus Consol. Govt*., 285 Ga. 477, 479-480 (678 SE2d 76) (2009) (plaintiffs' allegations that defendants failed to perform public duty promised to voters was sufficient to establish standing)." *Sons of Confederate Veterans, et.al. v. Henry County Board of Commissioners*, No. S22G0039. AND *Sons of Confederate Veterans, et.al. v. Newton County Board of Commissioners*, No. S22G0045. GA Sup. Court October 25, 2022.

**D. Emergency Relief is Necessary**

111. The Constitution requires that elections be free, fair, and accurately counted. Furthermore, Petitioner's matter in not merely an infraction against constitutionally-protected rights that occurred in the past, but an ongoing violation against Petitioner's federally and constitutionally-protected voting rights through the utilization of EVS that do not adhere to legislated standards (TEX. ELEC. CODE §§ 1.003(a-1), 1.0015, 122.001, 123.001, 123.002).

112. Due to immediate and continuous harm to Petitioner – as Respondents caused his property (our votes) to be stolen and his privacy information to be compromised by third-party vendors – under principles of the balance of equity, Petitioner is entitled to emergency relief. TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure Rule 65.

113. The only way to prevent the violations against Petitioner's First, Fourteenth, and Fifteenth Amendment rights is to refrain from using vulnerable EVS to administer future elections and vacate the certification of illegal election results.

114. The relief requested by Petitioner is the only way to eliminate the discrimination, voting rights violations and deprivation of constitutional rights from occurring in Galveston County elections via EVS and their related devices and equipment. Accordingly, emergency relief is appropriate and necessary to remedy the violations of Petitioner's constitutionally-protected rights.

115. "[W]hen a constitutional violation is likely ... the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." Id. (internal quotation marks omitted); see also *Obama for Am. v. Husted*,697 F.3d 423, 436 (6th Cir.2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed."); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty*.,274 F.3d 377, 400 (6th Cir.2001). *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty*., 796 F.3d 636, 649 (6th Cir. 2015).

116. Due to irreparable harm to Petitioner's personal property (my vote), Petitioner is entitled to and intends to file a petition for permanent writ of injunction to supplement this amended petition. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure Rule 65.

## VII. COUNTS

117. Petitioner brings this cause under the U.S. Constitution in which the Ninth amendment provides: The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people. Petitioner maintains the right to lawfully vote and have his vote counted, as well as stand in this Court to seek redress for the abuses against the Petitioner and the Constitution (U.S. CONST. art. VI).

**COUNT I - Violation of Due Process**
**UNDER 42 U.S.C. § 1983, 28 U.S.C. §1331dp**
**(First and Fourteenth Amendments)**

(Seeking declaratory and injunctive relief against All Respondents)

118. Petitioner incorporates the foregoing paragraphs as if set forth in full herein: In order establish a claim under section 1983 of the Civil Rights Act, a Petitioner must prove a Respondent: (a) acted under the color of state law; (b) proximately causing; (c) the Petitioner to be deprived of a federally protected right. *42 U.S.C. § 1983.* For this matter, Respondents violated the federally protected rights of voting, *18 U.S.C. 245.* In the instant case, Respondents unquestionably acted under the color of state and federal law. Each Individual Respondent is an official with the authority of duties pursuant to the United States and Texas Constitution and Statutes for the State of Texas.

119. The Free Speech Clause of the First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." See U.S. Const. amend. 1. The Free Speech Clause applies to the states by way of the Fourteenth Amendment. See *Snyder v. Phelps*, 580 F.3d 206, 214 n.4 (4th Cir. 2009) (citing *Stromberg v. California*, 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)). That short but forceful phrase has given rise to a complex array of legal protections for free expression, which the courts have flexibly applied in a variety of circumstances. Those precedents establish that the First Amendment protects speech along a spectrum, so that "[l]aws that impinge upon speech receive different levels of judicial scrutiny depending on the type of regulation and the justifications and purposes underlying it." See *Stuart v. Camnitz* , 774 F.3d 238, 244 (4th Cir. 2014). *Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019).

120. Since at least 2020, Petitioner has been **Forced** to participate with unlawful elections where Petitioner's voice, will, and consent is negated by our own government due to their reckless disregard for the law and constitution. The only remedy thus far has been:

a. Notify the proper authorities in Galveston County and our state government pursuant to TEX. ELEC. CODE § 273 in which the Petitioner has made attempts.
b. Not to participate in unlawful elections and thereby denied our right to vote.
c. Seek legal means via the Peoples' court.

**COUNT II - Violation of Equal Protection Clause**
**UNDER 42 U.S.C. § 1983**
**(Fourteenth and Fifteenth Amendment)**

(Seeking declaratory and injunctive relief against All Respondents)

121. Petitioner incorporates the foregoing paragraphs as if set forth in full herein: Under the Fourteenth Amendment of the Constitution, and as established by state law, including the state created Accardi Doctrine, Petitioner has a fundamental right to cast a ballot and vote in a legal and fair election. Under the Fifteenth Amendment to the Constitution, the right to vote for each citizen of the United States shall not be denied or abridged by any state on account of servitude by those in power without due process of law.

122. Petitioner is entitled to free and fair elections of our representatives, affirmed by the U.S. Constitution, Article 1, without invasion of our private information. In *Rice v. Cayetano*[48], the Court ruled the Fifteenth Amendment, "...reaffirms the equality of races at the most basic level of the democratic process, the exercise of the voting franchise." The Court did not specify the Fifteenth Amendment applies only to a protected class, but rather it applies to everyone.[49]

---

48 https://uscode.house.gov/view.xhtml?req=(title:18%20section:245%20edition:prelim)%20OR%20(granuleid:USC-prelim-title18-section245)&f=treesort&num=0&edition=prelim

49 http://cdn.loc.gov/service/ll/usrep/usrep528/usrep528495/usrep528495.pdf

123. Even if the Fifteenth Amendment did not apply to everyone, voters constitute a protected class under the Constitutional conception for our society for the consent of the governed (Declaration of Independence, U.S. CONST. art. IV § 4 and art. VI, TEX. CONST. art. I § 2).

124. As part of their sworn duty (TEX. CONST. art. XVI § 1), our elected officials have an imperative responsibility to guarantee protection of the election process from any form of fraud or profiteering as this could lead to discrimination of voters, regardless of classification. The discrimination occurs as Texans are separated into the "ruling class" and the "commoners" through unlawful voting methods and procedures.

125. Respondents continued to certify election results knowing they violated civil liberties subsequently forcing Petitioner into fraudulent contracts with illegally elected government officials: providing said officials with unlawful power to enforce actions under the color of law coercing and subjecting Petitioner into servitude in which our liberty to determine our own course and way of life has been strong-armed from us (U.S. CONST. amend. 13).

126. Additionally, when elected officials fail to provide the level of protection necessary to secure the election franchise (TEX. ELEC. CODE § 123.002), it is the right and duty of the American people to correct this deficiency. The Court cannot deny this Right to the people even when the injury is widespread.

127. Failure to perform their sworn duty has allowed discrimination to occur across the equality of races in the State of Texas. This violates the Right to Vote Clause of the Fifteenth Amendment.

128. Furthermore, by failing to protect against private interference (i.e.: vendor voting systems, Scytl, et al) of the election process by not adhering to Federal election/voting system

certification standards (HAVA 2002), and the most basic cyber security defense and hardening frameworks, Respondents failed to comply with 18 U.S.C. § 245(1)(a).

129. Therefore, Respondents do not comply with the Enforcement Clause of the Fifteenth Amendment. Petitioner was harmed and continues to be irreparably harmed by these unlawful acts, including by suffering forced contract with representatives through deceptive practices and fraudulent certifications. *TEX. ELEC. CODE § 276.013(a)(4).*

**COUNT III – Deprivation of Civil Rights**
**UNDER 42 U.S.C. § 1983vp, 42 U.S.C. § 1985**

**(First, Fifth, and Fourteenth Amendments)**

(Seeking declaratory and injunctive relief against All Respondents)

130. Petitioner incorporates the foregoing paragraphs as if set forth in full herein: Article I § 13 of the Texas Constitution provides, "All courts shall be open, and every person, for an injury done him, in his land, goods, person, or reputation, shall have remedy by due course of law."

131. The Fourteenth Amendment U.S. Constitution affords the people of Texas with the right to be free from violations of the procedural due process rights, and no person may be deprived of life, liberty, or property without due process of law (TEX. CONST. art. I § 19 and § 29).

132. Petitioner has constitutionally protected interests to use his expression to cast a vote for the representative of his choosing and not being subject to the illegal voting systems/equipment, software, and modifications. This includes the ability to pursue his First Amendment right to legal elections without being subjected to casting illegal votes in violation of both state and federal laws.

133. Each day Petitioner has suffered irreparable harm living under a government that no longer represents we the people and deprives the Petitioner, and all voters of the state of Texas, of the Republic that the Constitution of the State of Texas and United States Constitution outlined as protection from a tyrannical government.

134. This brings Petitioner here today to seek redress of our First, Fourteenth, and Fifteenth amendment rights under 42 U.S.C. § 1983, "taking on the mantel of the sovereign," guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden." *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973).

135. The general public benefits from the remedy against the constitutional infringements where any citizen can bring a case before the court as long as it impacts the public interest, and benefits the general public, not just the Petitioner. *Assoc. Indus. of New York v. Ickes,* 134 F.2d 694, 704 (2d Cir. 1943).

**COUNT IV – Deprivation of Constitutional Rights**
**UNDER 28 U.S.C. 1331vc, 42 U.S.C. § 1986, Declaration of Independence, Preamble to the U.S. Constitution, First, Fourteenth, and Fifteenth Amendments)**

(Seeking declaratory and injunctive relief against All Respondents)

136. Petitioner incorporates the foregoing paragraphs as if set forth in full herein: Petitioner has a fundamental right to cast a vote in a legal and fair election in which their vote is their intellectual property.

137. Petitioner was harmed and continue to be irreparably harmed by these unlawful acts, including by suffering forced contracts with representatives through deceptive practices and fraudulent certifications. *TEX. PEN. CODE §39.03(2).*

138. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Hernandez*, 872 F.3d at 994-95.

139. "It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Lackey v. State*, 638 S.W.2d 439, 467 (Tex. Crim. App. 1982). "The judiciary has a historic duty to uphold constitutional protections of individual liberties." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 472 (Tex. 2012).

140. The Courts recognize the necessity of prohibiting a State (or subdivision thereof) from exploiting a power to justify the imposition of an "unconstitutional condition." "Acts generally lawful may become unlawful when done to accomplish an unlawful end, *United States v. Reading Co*., 226 U.S. 324, 357, and a constitutional power cannot be used by way of condition to attain an unconstitutional result." *Western Union Telegraph Co. v. Foster*, 247 U.S. 105, 114. *Gomillion v. Lightfoot*, 364 U.S. 339, 347-48 (1960).

**COUNT V – Voting Rights Violation**
**UNDER 52 U.S.C. §10101, 28 U.S.C. § 1943 (First, Ninth, Fourteenth, and Fifteenth Amendments)**

(Seeking declaratory and injunctive relief against All Respondents)

141. Petitioner incorporates the foregoing paragraphs as if set forth in full herein: In order to establish a claim under 52 U.S.C. § 10101(a)(2)(B): (1) the proscribed conduct must be engaged in by a person who is "acting under color of law" [Respondents]; (2) it must have the effect of "deny[ing]" an individual "the right to vote" [TEX. ELEC. CODE §§ 1.0015 and 276.013 – causing Petitioner to cast illegal ballot, which such illegal ballot is not to be counted]; (3) this denial must be attributable to "an error or omission on [a] record or paper" [TEX. ADMIN. CODE § 81.60 and § 81.61 – certification of uncertified EVS, TEX. ELEC. CODE § 123.001 – approval/adoption of uncertified EVS]; (4) the "record or paper" must be "related to [an] application, registration, or **other act requisite to voting**" [TEX. ELEC. CODE §§ 122.001(a)(3) and 123.001, 52 U.S.C. § 20507(a)(7)]; and (5) the error or omission must not be "material in determining whether such individual is qualified under State law to vote in such election [TEX.

ELEC. CODE §§ 13.001 and 13.002]." *Ritter v. MiglioriI*, 142 S. Ct. 1824, 1825 (2022) (on the implied right of action of 52 U.S.C. § 10101).

142. In the instant case, Respondents unquestionably acted under the color of state and federal law. Each Individual Respondent is an official with the authority of duties pursuant to Texas Constitution and Statues for the State of Texas. Under the First, Fourteenth, and Fifteenth Amendment to the Constitution, and as established by state law including the state created Accardi Doctrine, Petitioner has a fundamental right to cast a ballot and have his ballots counted in a legal and fair election (Ninth Amendment). Petitioner was harmed and continue to be irreparably harmed by these unlawful acts, including by suffering forced contract with representatives through deceptive practices and fraudulent certifications. *TEX. PEN. CODE § 39.02.*

143. The immediate injury continues as Texas officials continue to allow us to vote in another election conducted on uncertified and networked machines is a violation of our First, Fourteenth, and Fifteenth amendment rights and a violation of TEX. ELEC. CODE § 122.01(3)(4), § 123.001, § 123.002, § 129.054(a)(b)(c), § 122.031(c). The Petitioner stands to lose more of our freedoms as each day passes without resolution.

144. We, the people, have the Right to elect our representatives. We, the people, have the Right to ensure elections are free and fair. We are not just ensured the Right to CAST the vote. We, the people, are guaranteed the Right to ELECT our government. This entire process must be guaranteed. Anything that circumvents that process is inherently infringing upon the Right we are granted to pursue life, liberty, and the pursuit of happiness. (U.S. CONST art. IV § 4, Ninth Amendment, TEX. CONST. art. I § 19).

**COUNT VI – Declaratory Judgment**
**UNDER 28 U.S.C. § 2201, § 2202**
(Against All Respondents)

145. Petitioner incorporates the foregoing paragraphs as set forth in full herein: Respondents conduct has and will continue to violate the rights of citizens of Texas, as set forth above. The Court has the authority pursuant to 28 U.S.C. § 2201, § 2202 to issue an Order enjoining the Respondents from conducting further elections in which the votes are not accurately or securely tabulated. If Galveston County proceeds with elections as described above, it will continue to violate the rights of Texans by conducting an uncertified, non-compliant EVS that are susceptible to invasion of the Constitutional vote and privacy. The Court should issue an Order vacating the certification of the November 8, 2022, election results and enjoining the State from using any EVS and its respective devices to include, but not limited, to poll pads, tabulators, printers, etc.

146. Immediate and irreparable injury, loss, or damage will result to Petitioner if the requested relief against the destruction of the election records from the 2020 general election, 2021 constitutional election, 2022 primaries, and current 2022 November election does not occur.

147. Furthermore, the Court should issue order enjoining officials from the spoilation, destruction, alteration of all records including, but not limited to: paper ballot, absentee ballots, tabulation databases, adjudication databases, pollbook databases, election definition files, scanned ballot images, cast vote records, logic and accuracy testing results, logs and reports stored on all electronic, election equipment (including, but not limited to the Election Management System (EMS), client workstations, pollbooks, tabulators, Direct Recording Electronic (DRE) devices, Ballot Marking Devices (BMD), and Election Night Reporting (ENR) archives, project database backups, and any other form of backups). TEX. ELEC. CODE § 66.02, § 66.058; and further, to order a thorough independent forensic examination of each ballot by highly qualified document

examiners, will serve to restore the public's confidence in the state's election process. See *Karen Wiseman v. Tarrant County, Texas and Heider Garcia* (2021) No. 096-330696-21, Texas.

## VII. CONCLUSION

148. Respondents knowingly caused Petitioner to vote on noncompliant machines that were not certified due to lack of accredited VSTL(s) since at least the November 3, 2020 elections in violation of the Texas Election Code, Title 8.

149. This conduct renders the results void. The Respondents continued to certify election results knowing they violated Texans' civil liberties, subsequently forcing Petitioner into fraudulent contracts with illegally elected government officials. Officials were provided unlawful power to enforce actions under the color of law and used this power to coerce and subject Petitioner into servitude through unlawful elections. Petitioner's liberty to determine his own course and way of life has been strong-armed from him.

150. Respondents have "no authority to pass upon the question of negligence or freedom from negligence. He has no discretion but is obliged to act as the law provides." *DeVries v. Secretary of State,* 329 Mich. 68 (1950). 44 N.W.2d 872.

151. *Sherar v. Cullen,* 481 F 946 (1973), "There can be no sanction or penalty imposed upon one because of this exercise of constitutional rights." "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron,* 358 U.S. 1, 78 S. Ct. 1401 (1958).

152. Although Respondents may assert immunity against these claims, the Constitutional theory is that "we the people" are the sovereign authority, the state and federal officials only our agents. As Judge P. Higginbotham dissented, "the 11th Amendment does not bar these claims under the 14th Amendment… The role of the Court in protecting the most vital right

of a democratic government: the right to vote; should not be denying the right to vote." *Texas Alliance for Retired Americans; Sylvia Bruni; DSCC; DCCC v. Scott Secretary of State 20-40643 March 16, 2022. United States Court of Appeals, Fifth Circuit.*

153. Petitioner maintains a right to defend himself and others from attack (Ninth Amendment). Petitioner maintains the same right to defend the election process when it is subject to profiteering by actors who would seek to abolish sovereignty in favor of a dictatorship. We, the people, carry this Right and every other Right in the same manner we would a physical firearm. Every single Right we enjoy, as affirmed in the Constitution, is a weapon and protection against tyranny. A violation of the Right to Vote is a violation of all Rights.

## VIII. PRAYER FOR RELIEF

WHEREFORE, "For there is no authority except from God, and the authorities that exist are appointed by God." *Romans 13:1* (NKJV). Petitioner prays that the Court grant the following relief:

a. ASSUMES jurisdiction of this action in the interest of justice. 28 U.S.C. §§ 1331, 1343, 1367.

b. ISSUES and EXPEDITES judgment. Rule 501, TEX. GOV. CODE §§ 23.301, 23. 302;

c. Vacates and sets aside all uncertified and illegal voting systems/equipment, software, and modifications used to unlawfully conduct elections. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure 65.

d. GRANTS an emergency injunction prohibiting the acceptance of results from Respondents certifying the results from the November 8, 2022 election conducted on the unlawful EVS, pollbooks, or devices. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure 65.

e. DECLARES that the Respondents have violated the Texas Constitution Equal Protection Clause; 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

f. DECLARES that the Respondents have violated the Texas Constitution Due Process Clause; 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

g. GRANTS a permanent injunction prohibiting Respondents from requiring or permitting voters to have votes cast or tabulated using any electronic voting systems, pollbooks, or devices. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure Rule 65.

h. GRANTS a permanent injunction prohibiting Respondents from destruction/deletion of any and all election records created under Title 8 of the Tex. Elec Code to include all paper ballots created by voting systems, USB devices, memory cards, electronic storage devices, mail in ballots, tabulation tapes, USB final counts from precincts and all other election records not specifically stated from the 2020, 2021, and 2022 elections. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure Rule 65.

i. DECLARES that the Respondents approvals/adoptions of all voting system/equipment, software, and modifications are void and without legal force or effect; 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

j. DECLARES that the Respondents approval/adoption policies are arbitrary, capricious, and based on negligence and disregard, in accordance with law and without observance of both the required procedure and Accardi Doctrine; 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

k. DECLARES that the approvals/adoptions and the actions taken by Respondents are in violation of the Constitution and contrary to the laws of the United States and the State of Texas; 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

l. Permanently enjoins Respondents, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing and/or enforcing the certifications of all voting systems/equipment, software and modifications that are not in compliance with the applicable law; TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure 65.

m. Grant such other and further relief as may be just, equitable, and proper, including, without limitation, an award of any attorneys' fees and costs to Petitioner.

Respectfully submitted this 10th day of November, 2022.

By: /s/ *Steven Harvey*
Steven Harvey
12511 32nd Street
(409) 599-5691
Santa Fe TX 77510
scharvey69@yahoo.com

*Pro se*
Petitioner

**CERTIFICATE OF SERVICE**

I, Steven Harvey, certify that on November 17, 2022, a copy of this Motion for Emergency Injunction was served on Counsel for the Respondents by ECF.
DATED: November 17, 2022.

/s/ *Steven Harvey*
Steven Harvey

**Affidavit**

Pursuant to 28 U.S.C. 1746, I, STEVEN HARVEY, make the following declaration:
Affiant supports in writing a cause that demonstrates Respondents' actions as outlined above in this complaint/petition violate several state and federal laws, which are against The People of Texas, and also, against the peace and dignity of the State.

1. In Galveston County a voting system was used that was not properly certified or approved by the Secretary of State. Public information about our election system was withheld from us until the Texas Attorneys General sent them a letter to release the information, and a foreign owned company called Scytl was used for vote reporting.

2. I believe my vote could have been changed and possibly illegal votes casted.

3. If this continues, I cannot trust that my vote will be counted correctly.
I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this September 28, 2022.

Affiant: /s/*Steven Harvey*

Contact information
Steven Harvey
12511 32nd street
Santa Fe, Texas 77510
(409)599-5691
scharvey69@yahoo.com