UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **STEVEN HARVEY**<br>*Petitioners*,<br>**v.**<br><br>**DWIGHT D. SULLIVAN, Galveston County Clerk; MARK HENRY, Galveston County Judge; DARRELL APFFEL, Galveston County Commissioner Precinct 1, JOE GIUSTI, Galveston County Commissioner Precinct 2, STEPHEN D. HOLMES, Galveston County Commissioner Precinct 3, AND ROBIN ARMSTRONG, Galveston County Commissioner Precinct 4,**<br>*Respondents*. | Civil Action No. 3:22-cv-00337 |

# Petitioner's Opposed Motion for Emergency Injunction

Steven Harvey
12511 32nd Street
(409) 599-5691
Santa Fe TX 77510
scharvey69@yahoo.com
*Pro se Petitioner*

Bryan R. Lasswell
Attorney-in-Charge
Federal Bar No. 15715
SBOT: 00784450
brlasswell@mapalaw.com

Genevieve Bacak McGarvey
Federal Bar No. 11272
SBOT: 01487525
gbmcgarvey@mapalaw.com

John W. Drewry, Jr.
Federal Bar No.: 3170417
SBOT: 24085291
jwdrewry@mapalaw.com

Kierra J. Vogel
Federal Bar No. 3795634
SBOT: 24120212
kjvogel@mapalaw.com

MCLEOD, ALEXANDER, POWEL & APFFEL, P.C.
802 Rosenberg P.O. Box 629
Galveston, Texas 77553
Ph: (409)763-2481
Fax: (409)762-1155
ATTORNEYS FOR DEFENDANTS

*TO THE HONORABLE JUDGE JEFFREY V. BROWN,*

COME NOW, PETITIONER STEVEN HARVEY, (hereinafter referred to as "Petitioner"), and Pursuant to Rules 65(a) and 65(b)(3) of the Federal Rules of Civil Procedure file this Opposed Motion for Preliminary Injunctive Relief, barring Respondents from utilizing Electronic Voting Systems (EVS) in future elections and vacating the certification of the November 8, 2022, election results.

## Table of Contents

**TABLE OF AUTHORITIES** ........ **3**
**BRIEF IN SUPPORT** ........ **6**
**STANDARD OF REVIEW** ........ **7**
**FACTUAL ALLEGATIONS** ........ **7**
**ARGUMENT AND AUTHORITIES** ........ **9**
**EMERGENCY RELIEF IS NECESSARY** ........ **11**
- **A. Petitioner Is Likely to Succeed on the Merits.** ........ 11
- **B. Petitioners Will Suffer Irreparable Harm Absent Emergency Relief.** ........ 13
- **C. Petitioners have a Right to the Reliefs Sought** ........ 14
- **D. The Balance of Equities Favors an Injunction.** ........ 15
  - i. Timing ........ 16
  - ii. Status Quo ........ 17
- **E. The Requested Injunction Is in the Public Interest.** ........ 18
  - i. Balance of Hardships and Public Interest ........ 18

**CONCLUSION** ........ **19**
**PRAYER FOR RELIEF** ........ **20**

**CERTIFICATE OF SERVICE .......................................................................................... 21**

## TABLE OF AUTHORITIES

### *Cases*

Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty., 796 F.3d 636, 649 (6th Cir. 2015).................19
Assoc. Indus. of New York v. Ickes, 134 F.2d 694, 704 (2d Cir. 1943)..........................................................19
Baker v. Carr, 369 U.S. 186, 208 (1962) ..........................................................................................12
Bonbrest v. Kotz, 65 F. Supp. 138 (D.C.D.C., 1946) ...........................................................................17
Burdick v. Takushi, 504 U.S. 428, 433 (1992) ......................................................................................12
Bush v. Gore, 531 U.S. 98, 104-05 (2000) ..........................................................................................13
Cinevision Corp. v. City of Burbank, 745 F.2d 560, 575 (9th Cir. 1984) ..................................................9
City of Dallas v. Abbott, 304 S.W.3d 380, 384 (Tex. 2010) ...................................................................16
Common Cause/Georgia v. Billups, 406 F. Supp. 2d 1326, 1376 (N.D. Ga. 2005) ....................................15
Common Cause/Georgia v. Billups, 406 F. Supp. 2d 1326, 1376 (N.D. Ga. 2005). ...................................15
Crawford v. Marion Cnty. Election Bd., 553 U.S. 181, 197 (2008) ..........................................................18
D.C. Court of Appeals v. Feldman, 460 U.S. 462, 477 (1983) .................................................................17
Daily v. Parker, 152 F.2d 174, 162 A.L.R. 819, C.A.7, 1945 .................................................................17
Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.,274 F.3d 377, 400 (6th Cir.2001).19
Dish Network v. Bauder, Case No: 6:14-cv-1443-Orl-31DAB, at *15 (M.D. Fla. Mar. 12, 2015) ..................18
Dobbs v. Jackson Women's Health Organization, No. 19-1392 (June 24, 2022)..............................................15
Dunn v. Blumstein, 405 U.S. 330, 336 (1972)........................................................................................13
Elrod v. Burns, 427 U.S. 347, 373 (1976) ..............................................................................................13
Forward v. Ben Hill Cnty. Bd. of Elections, 512 F. Supp. 3d 1354, 1372-73 (M.D. Ga. 2021).......................15
Fusaro v. Cogan, 930 F.3d 241 (4th Cir. 2019) .......................................................................................11
Gomillion v. Lightfoot, 364 U.S. 339, 347-48 (1960) ...............................................................................20
Gray v. Sanders, 372 U.S. 368, 380 (1963) ............................................................................................13
Hearts Bluff Game Ranch, Inc. v. State, 381 S.W.3d 468, 472 (Tex. 2012) ...............................................19
Heine v. New York Life Insurance Co., 50 F.2d 382, C.A.9, 1931 ...............................................................17
Hill v. Sibley Memorial Hospital, 108 F. Supp. 739, 740 (D.C.D.C., 1952)...................................................17
In re D.D.L., No. 13-22-00062-CV, at *5 (Tex. App. Aug. 25, 2022) .............................................................9
In re S.M.D., 329 S.W.3d. (Tex. App. 2010)..............................................................................................9
In re Team Rocket, L.P., 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding)...............................................17
Kershaw v. Julien, 72 F.2d 528, 530 (10th Cir. 1934)..................................................................................18
McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) ...........................................................7
Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)...............................................................................13
Morrow v. Yannantuono, 152 Misc. 134, 273 N.Y.S. 912 ................................................................................17
N.L.R.B. v. Slagle Mfg. Co., 658 F.2d 785, 786 (10th Cir. 1981)......................................................................9
NLRB v. Carroll Contracting Ready-Mix, Inc.,636 F.2d 111, 113 (5th Cir. 1981)............................................9

NLRB v. Claxton Manufacturing Co.,613 F.2d 1364, 1371 (5th Cir. 1980) ........ 9
Obama for Am. v. Husted,697 F.3d 423, 436 (6th Cir.2012) ........ 19
Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ........ 18
Reynolds v. Sims, 377 U.S. 533, 562 (1964) ........ 12
Snyder v. Phelps , 580 F.3d 206, 214 n.4 (4th Cir. 2009) ........ 10
State v. Johnson, 821 S.W.2d 609 (Tex. Crim. App. 1991) ........ 15
State v. Terrazas, 962 S.W.2d 38, 40 n.2 (Tex. Crim. App. 1998) ........ 15
Stromberg v. California , 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) ........ 10
Stuart v. Camnitz , 774 F.3d 238, 244 (4th Cir. 2014). ........ 11
Unida v. Volpe, 337 F. Supp. 221, 225 (N.D. Cal. 1971). ........ 17
United States v. Pennzoil Company, 252 F. Supp. 962, 970-71 (W.D. Pa. 1965) ........ 17
United States v. Reading Co., 226 U.S. 324, 357 ........ 20
United States v. Saylor, 322 U.S. 385, 386 (1944) ........ 12
Weeks v. United States, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652, 656 (1914) ........ 15
Wesberry v. Sanders, 376 U.S. 1, 17 (1964) ........ 12
Western Union Telegraph Co. v. Foster, 247 U.S. 105, 114 ........ 20
Youngevity Int'l, Corp. v. Smith, 224 F. Supp. 3d 1022, 1028 (S.D. Cal. 2016) ........ 19

### *Statutes*

28 U.S.C. § 1331 ........ 20
28 U.S.C. § 1343 ........ 20
28 U.S.C. § 1343(a)(3) ........ 11, 20
28 U.S.C. § 1367 ........ 20
42 U.S.C. §15371(b) ........ 7
52 U.S.C. 20971 ........ 8
HAVA ........ 7
TEX. ADMIN. CODE § 81.60 ........ 7
TEX. ADMIN. CODE § 81.61 ........ 7
TEX. CIV. PRAC. & REM. CODE § 65.011 ........ 11, 20
TEX. ELEC. CODE § 1.0015 ........ 7
TEX. ELEC. CODE § 1.003(a-1) ........ 7
TEX. ELEC. CODE § 1.014 ........ 8
TEX. ELEC. CODE § 122.032 ........ 8
TEX. ELEC. CODE § 123.001 ........ 8
TEX. ELEC. CODE § 123.002 ........ 8
TEX. ELEC. CODE § 273.081 ........ 11, 20
TEX. ELEC. CODE § 276.013 ........ 9
TEX. ELEC. CODE § 52.062 ........ 8
TEX. ELEC. CODE §122.01 ........ 7
TEX. ELEC. CODE Chp. 65 ........ 20

TEX. GOV. CODE § 23. 302 ....... 20
TEX. GOV. CODE § 23.301 ....... 20
TEX. GOV. CODE § 23.302 ....... 11, 20
Texas Election Code, Title 8 ....... 16

### *Other Authorities*

Cohn, Jennifer. (2018) "Handout: The truth about our computerized election systems; Recommendations for advocating for hand marked paper ballots" https://jennycohn1.medium.com/handout-the-truth-about-our-computerized-election-systems-c4a17539de71 ....... 14

### *Constitutional Provisions*

Declaration of Independence ....... 6
Due Process Clause ....... 11
Equal Protection Clause ....... 11
of TEX. CONST. art. VI § 4 ....... 8
Right to Vote Clause ....... 14
TEX. CONST. art. I § 1 ....... 6
TEX. CONST. art. I § 2 ....... 6
TEX. CONST. art. I § 3 ....... 6
TEX. CONST. art. I § 13 ....... 6
TEX. CONST. art. I § 19 ....... 6
TEX. CONST. art. V § 1 ....... 14
TEX. CONST. art. 16 § 1 ....... 15
TEX. CONST. art. VI § 2 ....... 6, 8
TEX. CONST. art. VI § 2(c) ....... 6, 9
TEX. CONST. art. VI § 4 ....... 8
U.S. CONST. amend. 1 ....... 6, 10, 17
U.S. Const. amend. 13 ....... 14
U.S. CONST. amend. 14 ....... 17
U.S. CONST. amend. 15 ....... 17
U.S. CONST. art. I § 2 ....... 16
U.S. CONST. art. I § 3 ....... 16
U.S. CONST. art. I § 4 ....... 16

### *Rules*

Fed. R. Civ. P. Rule 65(a) ....... 2, 6
Fed. R. Civ. P. Rule 65(b)(3) ....... 2, 6

## BRIEF IN SUPPORT

1. The right to vote and know that one's vote is fairly and accurately counted is foundational to our Constitutional Republic. Texas voters no longer know whether their vote has been accurately tabulated or manipulated, and there can be no spot check within reasonable levels of confidence. This is a violation of Petitioner's Constitutional rights. Petitioner is entitled to free and fair elections of our representatives as affirmed in the United States Constitution under the First, Fourteenth, and Fifteenth Amendments and reaffirmed in the Texas State Constitution under Art. 1 § 2, § 13 and § 19, Art. VI § 2. As the Texas State Constitution and laws mirror the Constitution and laws of the United States, the State of Texas provides the means by which we exercise the right to vote.

2. Petitioner has demonstrated a vested interest in protecting the quality, accuracy, and effectiveness of individual votes to ensure the representative servants are lawfully elected by the consent of the governed for the protection against tyranny and for healthy maintenance of our Republican form of government afforded to us by our ancestors and for the benefit of our successors. Dec. of Ind., TEX. CONST. art. I §§ 1, 2, 3, and art. VI § 2(c). The Petitioner submits this Motion for Injunctive Relief as a supplement to his second amended petition and requests that this Court enter an emergency injunction barring Respondents from using Electronic Voting Systems (EVS) in future elections and vacating Respondents' certification of the November 8, 2022, election results in which election was conducted through unlawful computerized equipment to collect, store, count, and tabulate votes in violation of the Petitioner's voice, consent, and will through elections (U.S. CONST. 1st AMEND., TEX. CONST. art. VI § 2). This Court has authority to issue emergency writ of Injunction under Fed. R. Civ. P. Rules 65(a) and 65(b)(3).

## STANDARD OF REVIEW

3. To obtain preliminary injunction relief, the moving party must show: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injection issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injection may case the opposing party; and (4) if issued, the injunction would not be averse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). In the eleventh Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four prerequisites." Id. (internal citations omitted).

## FACTUAL ALLEGATIONS

4. Texas codified HAVA. It is the intent of the legislature that the application of this code and the conduct of elections be uniform and consistent throughout this state to reduce the likelihood of fraud in the conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted. TEX. ELEC. CODE § 1.0015. Election officials and other public officials shall strictly construe the provisions of this code to effect the intent of the legislature under Section 1.0015. TEX. ELEC. CODE § 1.003(a-1).

5. Petitioner supplied extensive sourced facts and resources validating that the electronic voting systems (EVS) employed since the 2020 election do not meet the voting system standards (TEX. ELEC. CODE §122.001) necessary to conduct free and fair election, and the EVS and their various components were not properly certified (TEX. ADMIN. CODE §§ 81.60 and 81.61). Specifically, Texas Election Code §122.001(a)(3) states "operates safely, efficiently, and accurately and complies with the voting system standards adopted by the Election Assistance Commission". Under HAVA 2002 (42 U.S.C. §15371(b)) "requires that the EAC provide for the

accreditation and revocation of accreditation of independent, non-federal laboratories qualified to test voting systems to Federal standards”.

6. Respondents made a choice to approve, adopt, and purchase election voting equipment that do not adhere to the standards set forth in Title 8 of the Texas Election Code. (TEX. ELEC. CODE §§ 1.014, 123.001, and 123.002).

7. Respondents, knowing the law, were knowingly negligent in their duties and have violated constitutional provisions and statutes through their ignoring the expiration of certifications of accreditation of VSTLs or the lack of legal signature per HAVA thereby allowing voting machines to be used in elections since 2020 violating Tex. Elec. code § 122.032, § 123.001, which are violations of TEX. CONST. art. VI §§ 2 and 4, 52 U.S.C. 20971, First, Fourteenth, and Fifteenth Amendments.

8. Respondents acting under the color of law allowed for the use of uncertified, non-complaint voting system equipment, software, and modifications for elections occurring in Galveston County in 2021 and 2022 violating TEX. ELEC. CODE §§ 122.032, 123.001, 123.002, which are violations of TEX. CONST. art. VI §§ 2 and 4, 52 U.S.C. 20971, First, Fourteenth, and Fifteenth Amendments.

9. Should a citizen of Texas decide to perform as a lawyer, doctor, teacher, etc. without having received a certified degree from an accredited university – the government would hold them accountable for fraud. Choosing the people who will represent the Petitioner as an official leader should require the same – if not higher – standard.

10. The election may be set aside irrespective of party conduct "if the acts [of non-party persons] disrupted the voting procedure or destroyed the atmosphere necessary to the exercise of a free choice in the representation election." *NLRB v. Carroll Contracting Ready-Mix,*

*Inc.*,636 F.2d 111, 113 (5th Cir. 1981); *NLRB v. Claxton Manufacturing Co.*,613 F.2d 1364, 1371 (5th Cir. 1980). *N.L.R.B. v. Slagle Mfg. Co.*, 658 F.2d 785, 786 (10th Cir. 1981). As a threshold matter, the court is required to review with particular care any claim that the governmental body is actually attempting to suppress controversial, political, or other forms of expression…Any willful or purposeful effort by a municipality to suppress protected expression clearly conflicts with the first amendment. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 575 (9th Cir. 1984).

**ARGUMENT AND AUTHORITIES**

11. Petitioner contends that Respondents, knowing the law, adopted and approved EVS and devices that do not adhere to the legislative prescribed standards, thereby inflicting harm upon Petitioner.

12. “"When standing has been conferred by statute, the statute itself serves as the proper framework for a standing analysis." *In re S.M.D.*, 329 S.W.3d at 12.” *In re D.D.L.*, No. 13-22-00062-CV, at *5 (Tex. App. Aug. 25, 2022). The privilege of free suffrage shall be protected by laws regulating elections and prohibiting under adequate penalties all undue influence in elections from power, bribery, tumult, or other improper practice (TEX. CONST. art. VI § 2(c), TEX. ELEC. CODE § 276.013).

13. Merely going through the motions of voting is not voting; furthermore, electing the person(s) one chooses to be a representative servant in official capacity is not “mere voting,” but the highest duty of all citizens striving for the preservation of the Republican form of government through the consent of the governed (U.S. CONST. art. IV § 4).

14. Pretending to vote on systems that do not meet the standards of law is much like pretending to get educated at an uncertified university. While everyone attending this university

may have injury, the individual's specific injury will be unique to the individual's specific life and having the lack of genuine credentials effects the individual's employability, finances, health, and overall well-being.

15. Similarly, Respondents caused injury to Petitioners by causing Petitioners to vote on uncertified, non-compliant systems and devices. Petitioners' vote lacked the credentials and was caused to be cast illegally (TEX. ELEC. CODE § 276.013), which has led to the installation of representatives rather than a true election by the people of the people and for the people. Were Petitioners' illegal votes counted, or were Petitioners' illegal votes not counted in accordance with legislative intent (TEX. ELEC. CODE § 1.0015)?

16. Respondents affirmatively placed Petitioner in a position of danger, knew the risk with twenty years of public record and congressional hearings attesting to such a hazard, and consequently, affirmatively placing Petitioner in danger of having his vote (expressions, wills, voices, consent) infringed upon, restrained, altered, diluted, illegalized, or negated. As the Respondents certified the illegal election, the results of such election should be vacated to prevent the illegal installment of officials.

17. The Free Speech Clause of the First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." See U.S. Const. amend. 1. The Free Speech Clause applies to the states by way of the Fourteenth Amendment. See *Snyder v. Phelps* , 580 F.3d 206, 214 n.4 (4th Cir. 2009) (citing *Stromberg v. California* , 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) ). That short but forceful phrase has given rise to a complex array of legal protections for free expression, which the courts have flexibly applied in a variety of circumstances. Those precedents establish that the First Amendment protects speech along a spectrum, so that "[l]aws that impinge upon speech receive different levels of judicial scrutiny

depending on the type of regulation and the justifications and purposes underlying it." See *Stuart v. Camnitz* , 774 F.3d 238, 244 (4th Cir. 2014). *Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019). Thus, "that, in those few cases in which organic failures in a state or local election process threaten to work patent and fundamental unfairness, a colorable claim lies for a violation of substantive due process (and, hence, federal jurisdiction attaches)." *Bonas v. Town of North Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001).

## EMERGENCY RELIEF IS NECESSARY

18. The Constitution requires that elections be free, fair, and accurately counted. The Respondents causing Petitioner to vote on uncertified, substandard EVS that negates his votes violates Petitioner's fundamental right to vote and Petitioner's rights under the Due Process Clause and the Equal Protection Clause. The only way to rectify these violations is to refrain from accepting the election results for the November 8, 2022 Election and prevent EVS from interfering in future elections.

19. Accordingly, emergency relief is appropriate and necessary to remedy the ongoing violations of Petitioners' constitutional rights. Due to the continued irreparable harm to Petitioner and under principles of the balance of equity, Petitioner is entitled to emergency writ of injunction. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure 65.

### A. Petitioner Is Likely to Succeed on the Merits.

20. Petitioner will prevail on the merits of their claims because the right to vote and have one's vote counted correctly together with all other legal votes is a basic right guaranteed by multiple constitutional provisions, and the use of EVS as Texas intends grossly infringes that right. "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citi-

zen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds,* 377 U.S. at 555. See also *United States v. Saylor*, 322 U.S. 385, 386 (1944) ("'[T]he free exercise and enjoyment of the rights and privileges guaranteed to the citizens by the Constitution and laws of the United States'" entails "the right and privilege . . . to have their expressions of choice given full value and effect by not having their votes impaired, lessened, diminished, diluted and destroyed by fictitious ballots fraudulently cast and counted, recorded, returned, and certified.").

21. Voting is an indisputable right "of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (internal quotation marks and citation omitted). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

22. Therefore, states may not, by arbitrary action or other unreasonable impairment, burden a citizen's right to vote. *Baker v. Carr*, 369 U.S. 186, 208 (1962) ("citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution"). "Since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964).

23. The scope of the fundamental right to vote requires states to adopt methods of voting, vote collection, vote counting, and vote tallying that ensure fair, accurate, and secure counting of all legal ballots and exclude any attempt to change the total results reported to differ

from the true sum of the votes legally cast. It necessarily encompasses the right to have all votes counted accurately. "Every voter's vote is entitled to be counted once. It must be correctly counted and reported." *Gray v. Sanders*, 372 U.S. 368, 380 (1963).

24. A voting system that counts ballots cast by some voters using different standards from ballots cast by other voters also violates the Equal Protection rights of the voters. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000); *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) ("[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction.").

25. The uncertified, substandard EVS are inherently vulnerable to improper manipulation of votes and vote totals. Therefore, they cannot be constitutionally used to administer Texas elections.

**B. Petitioners Will Suffer Irreparable Harm Absent Emergency Relief.**

26. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Hernandez*, 872 F.3d at 994-95. Galveston County certified the results of the election implemented through uncertified, substandard EVS, which will deprive Petitioner of constitutionally-protected rights.

27. Petitioner will suffer irreparable harm absent the grant of emergency relief as immediate and irreparable injury, loss, or damage will result to Petitioner if the requested injunctive relief is not granted.

28. Petitioner shows that a basic tenet of a free republic requires that the counting and tabulation of fraudulent ballots cannot be allowed to stand unchallenged.

29. Petitioner alleges Respondents' failure to perform their sworn duty has allowed discrimination to occur across the equality of statuses in the State of Texas. This violates the Right to Vote Clause of the Fifteenth Amendment.

30. The discrimination occurs as Texans are separated into the "ruling class" and the "commoners" through unlawful voting methods and procedures. The Respondents certified election results (once again) knowing they violated civil liberties subsequently forcing Petitioner into fraudulent contracts with illegally elected government officials: providing said officials with unlawful power to enforce actions under the color of law coercing and subjecting Petitioner into servitude in which our liberty to determine our own course and way of life has been strong-armed from us (U.S. Const. amend. 13).

31. Petitioner suffers irreparable harm living under a government that no longer represents "we the people" and deprives us of the Republic that the Constitution of the State of Texas and United States Constitution outline as protection from a tyrannical government. The injury alleged is not only possible, but increasingly imminent as Respondents certified the election results conducted on uncertified, substandard EVS and intend to continue using such equipment.

### C. Petitioners have a Right to the Reliefs Sought

32. The judicial power of this State is vested in the courts created by the Texas Constitution. Tex. Const. Art. 5, § 1. Although we will not explore the boundaries of "judicial power" in this opinion, judicial power certainly includes the power to enforce the constitutions and laws of the United States and the State of Texas. To enforce and protect constitutional rights, courts must have authority to fashion appropriate remedies for violations of constitutional rights. The only questions in such cases are whether there was a constitutional violation and what is the

appropriate remedy. Elected judges must swear or affirm that they will preserve, protect, and defend the United States Constitution and the Texas Constitution. Tex. Const. Art. 16, § 1. It would make no sense to provide for a constitutional right; require judges to preserve, protect, and defend that constitutional right; but prohibit judges from enforcing that constitutional right and from remedying a violation of that constitutional right. See also *Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652, 656 (1914) (if a remedy for the violation of a constitutional right is not provided, that right might as well be stricken from the Constitution). See *Dobbs v. Jackson Women's Health Organization*, No. 19-1392 (June 24, 2022) Justice Alito's opinion on the Doctrine of Stare Decisis. Constitutional rights are not simply grandiose, advisory principles. They are the foundation upon which our system of the orderly administration of justice is structured. (citing *State v. Johnson*, 821 S.W.2d 609 (Tex. Crim. App. 1991)), *State v. Terrazas*, 962 S.W.2d 38, 40 n.2 (Tex. Crim. App. 1998).

### D. The Balance of Equities Favors an Injunction.

33. The balance of equities favors entering the injunction sought by Petitioner. "The Court certainly appreciates and understands the inconvenience and expense that entering a preliminary injunction may work upon the State and Defendants. The Court, however, is mindful that the right to vote is a fundamental right and is preservative of all other rights. Denying an individual the right to vote works a serious, irreparable injury upon that individual. Given the right at issue and the likely injury caused by not entering a preliminary injunction, the Court finds that the potential injury to Plaintiffs outweighs the harm to the State and Defendants caused by entering a preliminary injunction. *Common Cause/Georgia v. Billups*, 406 F. Supp. 2d 1326, 1376 (N.D. Ga. 2005)." *Forward v. Ben Hill Cnty. Bd. of Elections*, 512 F. Supp. 3d 1354, 1372-73 (M.D. Ga. 2021).

34. In contrast, failing to enter the injunction and permitting the illegal certification for the results of an unlawful election and the continued use of EVS will continue to inflict immeasurable harm upon the voters of Galveston County. In addition to the deprivation of Petitioner's constitutional rights, the true election results would never be known with certainty, casting a shadow of illegitimacy over the subsequent official acts of the winning candidates.

35. If the defining feature of self-government is the selection of governing officials by majority vote, then conducting an "election" process in which the people cannot confidently know which candidate received the majority vote means intentionally casting aside self-government. That enormous harm would be felt by all persons, whether citizen, voter, or neither, because it would bring into dispute the governance of the public authorities. The resulting loss of legitimacy and increase in political strife would be felt by all.

i. Timing

36. Art. I § 2, 3, 4 of the United States Constitution assign the time, manner, and place to the state legislatures; however, the procedures, methods, and adoptions Respondents approved usurp the Texas Legislature's construction in the Texas Election Code, Title 8.

37. In defining Legislative construction, the Courts “"presume that the Legislature intended all provisions of a statute to be effective, and that it intended a just and reasonable result." *City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010)… the failure to employ mandamus when this type of substantial right is placed in jeopardy 'would vitiate and render illusory the right to a rapid, inexpensive alternative to traditional litigation' (quoting *Gulf Energy Pipeline Co.* , 884 S.W.2d at 824 )…In determining whether there is an adequate remedy, courts "must consider whether mandamus will preserve important substantive and procedural rights from im-

pairment or loss." *In re Team Rocket*, L.P., 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding)." *In re State*, 325 S.W.3d 848, 852 (Tex. App. 2010).

38. Respondents continue to conduct elections in violation of the stated election codes, as well as First, Fourteenth, and Fifteenth Amendments. "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 477 (1983).

ii. Status Quo

39. This injury brought forward in the second amended complaint is unprecedented. The Petitioner's facts have merit and are worthy to be heard due to their unprecedented nature to ensure the Constitutional questions surrounding this type of deprivation of rights be answered.

40. In order for a precedent to exist, there must be an antecedent case. The absence of precedents, then, is no authority against a right of action, and that circumstance does not in and of itself defeat a right of action. *Heine v. New York Life Insurance Co.*, 50 F.2d 382, C.A.9, 1931.

41. "It is well established that the mere absence of precedent does not prove that an action cannot be maintained." *Daily v. Parker*, 152 F.2d 174, 162 A.L.R. 819, C.A.7, 1945; *Morrow v. Yannantuono*, 152 Misc. 134, 273 N.Y.S. 912; *Hill v. Sibley Memorial Hospital*, 108 F. Supp. 739, 740 (D.C.D.C., 1952). To the same effect is *Bonbrest v. Kotz*, 65 F. Supp. 138 (D.C.D.C., 1946). Neither does the absence of precedents raise any presumption, ipso facto, that a plaintiff lacks a remedy. *United States v. Pennzoil Company*, 252 F. Supp. 962, 970-71 (W.D. Pa. 1965).

42. But, counsel argue, rigid rules of law intervene to prevent the righting of this wrong. If true, it is a grave reproach to our jurisprudence. But it is not true; rules of law are not as inflexible as counsel assert; if the decided cases afford no precedent for the redress of the

wrong here perpetrated, then a precedent should now be established. The genius of the common law is its flexibility, a virtue arising from the determination of courts of long ago that justice should be done. *Kershaw v. Julien*, 72 F.2d 528, 530 (10th Cir. 1934).

**E. The Requested Injunction Is in the Public Interest.**

43. The public interest requires free, fair, and accurately counted elections in which the votes of all legal voters are counted equally and are not diluted, altered, illegalized, or negated. This is also the constitutional right of Petitioner, and all Texas voters.

44. "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Hernandez*, 872 F.3d at 996 (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)). Further, eliminating even the appearance of unsecure elections serves the public interest. "[P]public confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008).

45. Therefore, the injunction against the illegal certification of the results of the November 2022 election and prevention of EVS for further elections strongly serves the public interest.

i. <u>Balance of Hardships and Public Interest</u>

46. "The balance of hardships and public interest favor injunctive relief. There is no hardship to Defendant, other than preventing him from engaging in unlawful activity. Therefore, the balance clearly weights in the plaintiffs' favor." *Dish Network v. Bauder*, Case No: 6:14-cv-1443-Orl-31DAB, at *15 (M.D. Fla. Mar. 12, 2015).

47. Defendants have not offered any persuasive reason as to why they should be allowed to continue misappropriating Plaintiffs' likenesses. Accordingly, the Court finds that the balance of equities and public interest also favor injunctive relief. The Court therefore GRANTS Plaintiffs' Motion for a Preliminary Injunction. *Youngevity Int'l, Corp. v. Smith*, 224 F. Supp. 3d 1022, 1028 (S.D. Cal. 2016).

48. The general public benefits from the remedy against the constitutional infringements where any citizen can bring a case before the court as long as it impacts the public interest, and benefits the general public, not just the Plaintiff. *Assoc. Indus. of New York v. Ickes*, 134 F.2d 694, 704 (2d Cir. 1943). Similarly, "[w]hen a constitutional violation is likely ... the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." Id. (internal quotation marks omitted); see also *Obama for Am. v. Husted*,697 F.3d 423, 436 (6th Cir.2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed."); Deja Vu of *Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*,274 F.3d 377, 400 (6th Cir.2001). *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015)

## **CONCLUSION**

49. Petitioner's petition for Declaratory Judgment and Emergency Relief was based upon the United States and Texas Constitution. Petitioner used both state and federal statutes and constitutional provisions as much of the State of Texas statutes and constitutional law parallels the federal. Petitioner's rights as a voter to have his vote counted accurately without the possible added risk of nullification or dilution have been infringed and provide injury in fact. "It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Lackey v. State*, 638 S.W.2d 439, 467 (Tex. Crim. App. 1982).

50. "The judiciary has a historic duty to uphold constitutional protections of individual liberties." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 472 (Tex. 2012). The Courts recognize the necessity of prohibiting a State (or subdivision thereof) from exploiting a power to justify the imposition of an "unconstitutional condition." "Acts generally lawful may become unlawful when done to accomplish an unlawful end, *United States v. Reading Co*., 226 U.S. 324, 357, and a constitutional power cannot be used by way of condition to attain an unconstitutional result." *Western Union Telegraph Co. v. Foster*, 247 U.S. 105, 114. *Gomillion v. Lightfoot*, 364 U.S. 339, 347-48 (1960).

**PRAYER FOR RELIEF**

WHEREFORE, "For there is no authority except from God, and the authorities that exist are appointed by God." *Romans 13:1* (NKJV). Petitioner prays that the Court grant the following relief:

a. ASSUMES jurisdiction of this action in the interest of justice. 28 U.S.C. §§ 1331, 1343, 1367.

b. ISSUES and EXPEDITES judgment. Fed. R. Civ. P. Rule 65 (b)(3), TEX. GOV. CODE §§ 23.301, 23. 302;

c. Vacates and sets aside all uncertified and illegal voting systems/equipment, software, and modifications used to unlawfully conduct elections. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure 65.

d. GRANTS a permanent injunction prohibiting Respondents from requiring or permitting voters to have votes cast or tabulated using any electronic voting systems, pollbooks, or devices. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure Rule 65.

e. GRANTS an emergency injunction prohibiting the acceptance of results from Respondents certifying the results from the November 8, 2022 election conducted on the unlawful EVS, pollbooks, or devices. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure 65.

Grant such other and further relief as may be just, equitable, and proper, including, without limitation, an award of any attorneys' fees and costs to Petitioner.

Respectfully submitted this 29th day of November, 2022.

By: /s/ *Steven Harvey*
Steven Harvey
12511 32nd Street
(409) 599-5691
Santa Fe TX 77510
scharvey69@yahoo.com

*Pro se*
Petitioner

## CERTIFICATE OF SERVICE

I certify that, on November 29, 2022, a copy of this Motion for Emergency Injunction was served on Counsel for the Respondents by ECF.

DATED: November 29, 2022.

/s/ *Steven Harvey*

Steven Harvey

# CERTIFICATE OF CONFERENCE

I hereby certify that the petitioner conferred on this 28th day of November 2022, [electronically] with attorney BRYAN LASSWELL, who opposes Petitioner's Emergency Injunction:
(PETITIONER'S PROPOSED MOTION FOR EMERGENCY INJUCTION)

By: /s/ *Steven Harvey*
Steven Harvey

12511 32nd Street
Santa Fe, Tx. 77510
(409)599-5691
Scharvey69@yahoo.com
*Pro se*

**Affidavit**

Pursuant to 28 U.S.C. 1746, I, STEVEN HARVEY, make the following declaration:
Affiant supports in writing a cause that demonstrates Respondents' actions as outlined above in this complaint/petition violate several state and federal laws, which are against The People of Texas, and also , against the peace and dignity of the State.

1. In Galveston County a voting system was used that was not properly certified or approved by the Secretary of State. Public information about our election system was withheld from us until the Texas Attorneys General sent them a letter to release the information, and a foreign owned company called Scytl was used for vote reporting.

2. I believe my vote could have been changed and possibly illegal votes casted.

3. If this continues, I cannot trust that my vote will be counted correctly.
I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this September 28, 2022
Affiant: /s/Steven Harvey



Contact information
Steven Harvey
12511 32nd street
Santa Fe, Texas 77510
(409)599-5691
scharvey69@yahoo.com